Brian Keith HOOPER, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. A12–1833.

Supreme Court of Minnesota.

Oct. 30, 2013.

Jeffrey C. Dean, Minneapolis, MN; and Jack Nordby, Plymouth, MN, for appellant.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, MN, for respondent.

## OPINION

STRAS, Justice.

Following a jury trial, the district court convicted appellant Brian Keith Hooper of three counts of first-degree murder and sentenced him to three concurrent sentences of life imprisonment with the possibility of release. We affirmed Hooper's convictions on direct appeal and the denial of his first two petitions for postconviction relief. See Hooper v. State (Hooper II ), 680 N.W.2d 89 (Minn.2004); State v. Hooper (Hooper I ), 620 N.W.2d 31 (Minn. 2000). The present appeal involves Hooper's third petition for postconviction relief, in which Hooper alleges that he is entitled to a new trial based on newly discovered evidence that: (1) he is innocent; (2) the trial judge's law clerk improperly dissuaded a defense witness from testifying at Hooper's trial; (3) the State withheld important evidence from him; and (4) three trial witnesses have recanted their testimony. Hooper also appeals the denial of his motion to remove all current and former judges of the Fourth Judicial District for cause. We affirm.

### I.

In April 1998, the police discovered the body of 77–year–old Ann Prazniak in her bedroom closet. Her killer had wrapped her in beige packaging tape and placed her in a cardboard box. The medical examiner concluded that "the cause of [Prazniak's] death was asphyxiation caused by the layers of packaging tape covering [Prazniak's] mouth and nose, a broken rib that [had] put pressure on her chest, and the upside down and tightly curled position of her body." Hooper I, 620 N.W.2d at 34.

A police investigation followed. Neighbors identified several individuals who had entered Prazniak's apartment in the weeks leading up to the discovery of her body, including Hooper and Chalaka Lewis. Hooper admitted to entering Prazniak's apartment on several occasions to have sex and smoke crack. However, he denied that he was involved in Prazniak's murder. Lewis's account was different. Although she initially denied knowledge of the murder, she eventually gave the police a detailed statement that implicated Hooper.

At trial, the State presented testimony from Lewis, L.J., C.B., C.K., and L.F., among others. Lewis testified that she had smoked crack in Prazniak's apartment building on the night of the murder. While she was searching for more drugs, Lewis saw Hooper in the doorway of Prazniak's apartment. Hooper offered crack to Lewis in exchange for her agreement to serve as a lookout for Hooper at the front door of Prazniak's apartment. Lewis agreed. Hooper then went into the bedroom of Prazniak's apartment and shut the door. A few minutes later, Hooper emerged from the bedroom. He found rolls of beige packaging tape in a desk drawer and demanded that Lewis tear off strips of the tape for him. Hooper then took the strips of tape into the bedroom. When Lewis later entered the bedroom, Hooper told her not to touch the closet door. Four other witnesses—L.J., C.B., C.K., and L.F.—each testified that Hooper independently admitted to them that he had killed Prazniak. The jury found Hoo-

per guilty of three counts of first-degree murder. *Hooper I*, 620 N.W.2d at 35–37; *see* Minn.Stat. § 609.185(a)(1) (2012) (first-degree premeditated murder); Minn.Stat. § 609.185(a)(3) (2012) (first-degree felony murder while committing burglary); *id.* (first-degree felony murder while committing kidnapping). The district court convicted Hooper of each count and sentenced him to three concurrent sentences of life imprisonment with the possibility of release after 30 years.

Hooper filed a direct appeal, which we stayed to allow Hooper to pursue his first petition for postconviction relief. In that petition, Hooper alleged a claim of newly discovered evidence based on the testimony of C.G., who asserted that his girlfriend and Lewis had "hurt a lady." *Hooper I*, 620 N.W.2d at 37. The postconviction court denied Hooper's petition because the newly discovered evidence was not material and would not produce a more favorable result at trial. Hooper appealed the denial of his petition. We vacated the stay of his direct appeal and consolidated the two appeals. We affirmed Hooper's convictions and the denial of his first postconviction petition. *Id.* at 41. As relevant here, we explained that "[the] newly discovered evidence would at most support a theory that Lewis was an accomplice to the murder[,] an assertion irrelevant to the issue of [Hooper's] own guilt." *Id.*

Hooper filed a second petition for postconviction relief in 2003. *Hooper II*, 680 N.W.2d at 91. In that petition, Hooper argued, among other things, that he was entitled to a new trial because C.B. and C.K. had recanted their trial testimony. *Id.* at 94. The postconviction court denied Hooper's second petition without holding an evidentiary hearing. *Id.* at 91. On appeal, Hooper argued, in relevant part, that the postconviction court abused its discretion when it summarily denied his second postconviction petition. *Id.* at 96. We affirmed. *Id.* at 98.

In July 2011, Hooper filed his third petition for postconviction relief. At that time, Hooper also submitted a motion to remove all current and former judges of the Fourth Judicial District for cause. The chief judge of the Fourth Judicial District denied Hooper's motion, but assigned Hooper's third petition to a judge who had neither presided over Hooper's jury trial nor heard either of Hooper's prior petitions for postconviction relief. Hooper did not file a writ of prohibition challenging the chief judge's denial of his motion.

In his third petition, Hooper asserted that he was entitled to a new trial for four reasons. First, he argued that L.J., C.B., and C.K. had each recanted their trial testimony. Second, he advanced a newly-discovered-evidence claim and a false-testimony claim based on an affidavit from A.A., who stated that Lewis had told him that she had "killed an old lady." Third, he asserted a newly-discovered-evidence claim based on an affidavit from T.E., who stated that the trial judge's law clerk had dissuaded him from testifying at Hooper's trial. Fourth, he alleged a *Brady* claim arising out of alleged promises that the State had made to C.B. in exchange for his testimony at Hooper's trial. *See Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). In response to the petition, the State argued that Hooper's claims were time-barred under Minn.Stat. § 590.01, subd. 4 (2012); were procedurally barred under the rule from *State v. Knaffla*, 309 Minn. 246, 243 N.W.2d 737 (1976); and did not merit relief.

The postconviction court concluded that two of Hooper's claims—those related to the newly discovered evidence of Lewis's confession and L.J.'s recantation—warranted an evidentiary hearing. After the evidentiary hearing, the postconviction

court denied relief. With respect to Lewis's alleged confession to A.A., the postconviction court concluded that Hooper's newly discovered evidence was doubtful and would not produce a more favorable result at trial. With respect to L.J.'s alleged recantation of his trial testimony, the court was not reasonably well satisfied that L.J.'s trial testimony was false or that the jury might have reached a different conclusion in the absence of L.J.'s testimony. The postconviction court summarily denied relief on the remaining claims in Hooper's petition, concluding that they were either meritless or procedurally barred under *Knaffla*.

## II.

Before turning to the questions presented in Hooper's third petition for postconviction relief, we first address a procedural matter. In the postconviction court, the State responded to Hooper's petition by arguing, among other things, that the petition was untimely under Minn.Stat. § 590.01, subd. 4(a). The court, however, considered the limitations period in connection with only one of Hooper's claims—the claim based on Lewis's alleged confession to A.A.—and concluded that the claim was not time-barred. The court did not consider whether Hooper's other claims were timely under subdivision 4(a).

In an appeal from the denial of a petition for postconviction relief, we generally first consider whether the petition was brought no later than "two years after . . . an appellate court's disposition of petitioner's direct appeal." *See* Minn.Stat. § 590.01, subd. 4(a)(2). However, under subdivision 4, if a petitioner's conviction became final before August 1, 2005, we instead consider whether the petition was filed within 2 years of that date—that is, by July 31, 2007. Act of June 2, 2005, ch. 136, art. 14, § 13, 2005 Minn. Laws 901,

1097–98. In this case, Hooper's convictions became final before August 1, 2005. Hooper thus had until July 31, 2007, to file his third petition for postconviction relief. Hooper's third petition was untimely because he filed it on July 25, 2011—nearly 4 years after the time allotted for filing a petition had expired.

Yet the State does not raise the applicability of Minn. Stat § 590.01, subd. 4(a), on appeal, and therefore arguably has abandoned the argument. *Brocks v. State*, 753 N.W.2d 672, 675 n. 3 (Minn. 2008) ("Failure to brief or argue an issue on appeal results in waiver of that issue on appeal."). We have yet to address, however, whether the limitations period in subdivision 4(a) limits the subject matter jurisdiction of a postconviction court or whether the State may waive its application because it is an affirmative defense. *See Lussier v. State*, 821 N.W.2d 581, 583 n. 1 (Minn.2012) (declining to address "whether the statute of limitations set forth in Minn.Stat. § 590.01, subd. 4(a), is an affirmative defense that is subject to waiver"). If the limitations period restricts the postconviction court's subject matter jurisdiction, then the appropriate disposition on appeal would be to remand to the postconviction court with instructions to dismiss the petition for lack of subject matter jurisdiction. *See In re Skyline Materials, Ltd.*, 835 N.W.2d 472, 478 (Minn.2013) (remanding to the district court with instructions to dismiss the appeal because the district court lacked subject matter jurisdiction over the case). If, on the other hand, the limitations period is an affirmative defense subject to waiver by the State, then we may proceed to consider the merits of Hooper's appeal. *See Carlton v. State*, 816 N.W.2d 590, 606–07 (Minn.2012) (considering other issues presented on appeal after concluding that the limitations period in Minn.Stat.

§ 590.01, subd. 4(c), does not present a jurisdictional bar).

We recently addressed a closely related question—whether the limitations period in Minn.Stat. § 590.01, subd. 4(c), is jurisdictional—in *Carlton v. State*, 816 N.W.2d 590 (Minn.2012). Section 590.01, subdivision 4(c), provides that any petition that invokes an exception to the 2–year limitations period in subdivision 4(a) "must be filed within two years of the date the claim arises." Minn.Stat. § 590.01, subd. 4(c). We concluded in *Carlton* that "the time limitation in subdivision 4(c) does not operate as a jurisdictional bar, and that it therefore is subject to waiver." *Carlton*, 816 N.W.2d at 606.

■ The reasoning in *Carlton* applies with equal force to subdivision 4(a). As we observed in *Carlton*, statutes of limitations generally deprive courts of jurisdiction when the claim subject to the limitations period is purely a statutory creation that was unknown at common law. *Id.* at 601. The remedies in the postconviction statute, however, are not purely creatures of statute. *Id.* at 601–02. Rather, the postconviction statute contains an exclusivity provision that provides "a strong indication that [it] merely codified or replaced preexisting remedies," including the common-law writs of habeas corpus and coram nobis. *Id.* at 602; *see also* Minn.Stat. § 590.01, subd. 2 (2012) (stating that the postconviction remedy "takes the place of any other common law ... remedies which may have been available for challenging the validity of a conviction, sentence, or other disposition").

The plain language of subdivision 4(a) also indicates that the limitations period does not operate as a jurisdictional bar. *See Carlton*, 816 N.W.2d at 602. "Subdivision 4 in the postconviction statute is titled 'Time limit,' and it does not reference the jurisdiction of the postconviction court in any way." *Id.* at 603. As the Supreme Court of the United States has stated, "time prescriptions, however emphatic, 'are not properly typed jurisdictional.'" *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 510, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting *Scarborough v. Principi*, 541 U.S. 401, 414, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004)). The Court did not premise its statement on any peculiarities of federal law, and we see no reason to adopt a different rule under Minnesota law. Therefore, in the absence of explicit language stating that the limitations period in Minn.Stat. § 590.01, subd. 4, is jurisdictional, we decline to depart from the general rule that time prescriptions do not present jurisdictional bars. *See Sebelius v. Auburn Reg'l Med. Ctr.*, —— U.S. ——, 133 S.Ct. 817, 824, 184 L.Ed.2d 627 (2013) (noting that unless Congress has clearly stated that a statutory limitations period is jurisdictional, "courts should treat the restriction as nonjurisdictional in character" (citations omitted) (internal quotation marks omitted)).

In fact, the argument that subdivision 4(a) does not present a jurisdictional bar is stronger than it was for subdivision 4(c). Subdivision 4(c), which imposes a period within which a postconviction petitioner must raise the five exceptions specified in subdivision 4(b), is not subject to any exceptions of its own. In contrast, subdivision 4(a) is subject to the exceptions listed in subdivision 4(b), suggesting strongly that subdivision 4(a) does not present a jurisdictional constraint. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 165, 130 S.Ct. 1237, 176 L.Ed.2d 18 (2010). Specifically, a postconviction court may consider a postconviction petition, regardless of the petition's timeliness under subdivision 4(a), if any of the following exceptions are satisfied and the petition is filed within "two years of the date the claim arises" under one of the exceptions:

(1) the petitioner establishes that a physical disability or mental disease precluded a timely assertion of the claim;

(2) the petitioner alleges the existence of newly discovered evidence, including scientific evidence, that could not have been ascertained by the exercise of due diligence by the petitioner or petitioner's attorney within the two-year time period for filing a postconviction petition, and the evidence is not cumulative to evidence presented at trial, is not for impeachment purposes, and establishes by a clear and convincing standard that the petitioner is innocent of the offense or offenses for which the petitioner was convicted;

(3) the petitioner asserts a new interpretation of federal or state constitutional or statutory law by either the United States Supreme Court or a Minnesota appellate court and the petitioner establishes that this interpretation is retroactively applicable to the petitioner's case;

(4) the petition is brought pursuant to subdivision 3 [which governs petitions from persons who were convicted and sentenced for a crime committed before May 1, 1980]; or

(5) the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests ·of justice.

Minn.Stat. § 590.01, subd. 4(b), (c). The exceptions listed in subdivision 4(b) have nothing to do with the subject matter jurisdiction of a postconviction court, but rather are the type of circumstances that would normally toll a statute of limitations. *See, e.g.,* Minn.Stat. § 541.05, subd. 1(6) (2012) (providing that the statute of limitations for a fraud claim does not begin to run until the plaintiff discovers "the facts constituting the fraud"); Minn.Stat. § 541.051, subd. 1(c) (2012) (declaring that the statute of limitations for damages based on services to real property commences upon the discovery of the injury); Minn.Stat. § 541.15(a)(2) (2012) (stating that a "plaintiff's insanity" tolls a statute of limitations); *see also Carlton*, 816 N.W.2d at 619 (Stras, J., concurring) (observing that the doctrine of equitable tolling shares many similarities with the interests-of-justice exception in Minn.Stat. § 590.01, subd. 4(b)(5)). "It would be at least unusual to ascribe jurisdictional significance to a condition subject to these sorts of exceptions." *Reed Elsevier*, 559 U.S. at 165, 130 S.Ct. 1237.

For the foregoing reasons, we conclude that the limitations period in subdivision 4(a) does not restrict the subject matter jurisdiction of a postconviction court. Because the State does not argue on appeal that Hooper's petition is untimely under subdivision 4(a), we further conclude that the State has waived our consideration of that issue. *See Brocks*, 753 N.W.2d at 675 n. 3. Accordingly, we now turn to the merits of Hooper's appeal.

III.

■ The second question presented by this case is whether the postconviction court abused its discretion when it concluded, after an evidentiary hearing, that Hooper was not entitled to a new trial based on newly discovered evidence that Lewis, the alleged alternative perpetrator from Hooper's trial, allegedly had confessed to A.A. that she had killed Prazniak. We apply "an abuse of discretion standard to review the postconviction court's determination of whether to grant a new trial based on new evidence." *State v. Hurd*, 763 N.W.2d 17, 34 (Minn.2009).

■ Claims of newly discovered exculpatory evidence are evaluated under the four-part test from *Rainer v. State*, 566 N.W.2d 692 (Minn.1997). Under *Rainer*, a petitioner must satisfy the following four

requirements to receive a new trial based on newly discovered evidence:

> (1) that the evidence was not known to the defendant or his/her counsel at the time of the trial; (2) that the evidence could not have been discovered through due diligence before trial; (3) that the evidence is not cumulative, impeaching, or doubtful; and (4) that the evidence would probably produce an acquittal or a more favorable result.

*Id.* at 695.

At the postconviction evidentiary hearing, A.A. testified that he smoked crack with Lewis at some point in 1999. After getting high with A.A., Lewis wanted to find more drugs. Lewis proposed a plan in which she would lure someone with the promise of sex and then rob the person with A.A.'s help, but A.A. refused to participate. Lewis called A.A. a "chump" and then allegedly told him that she had "killed an old lady before." According to A.A., Lewis never identified the "old lady" or the date when Lewis allegedly had killed her. A.A. testified that he never saw Lewis again.

A.A. testified that approximately 7 years later he encountered Hooper's brother, Virgil, who was seeking information about Prazniak's killer. A.A. stated that, shortly after his encounter with Virgil, he realized that "the old lady" to whom Lewis had referred was actually Prazniak. A.A. was unsuccessful in his initial attempts to contact Virgil and Hooper, but stated that he successfully sent a letter in 2009 to Hooper, who then conveyed the information to counsel. The parties stipulated, for purposes of the evidentiary hearing, that Hooper did not learn about Lewis's alleged confession until he received a letter from A.A. postmarked July 27, 2009.

Sergeant Tammy Diedrich testified that she spoke with A.A. at the Sherburne County jail before Hooper's evidentiary hearing. During the interview, Diedrich showed A.A. a photographic lineup that contained photographs of six African-American women. Lewis's photograph was the fifth picture in the lineup. According to Diedrich, A.A. said the first two photographs in the lineup were familiar and that the fourth woman's picture was possibly familiar. However, A.A. did not identify Lewis as someone whom he knew.

■ For three reasons, the postconviction court concluded that Hooper had not satisfied the third prong of the *Rainer* test because A.A.'s testimony was "extremely doubtful." First, A.A. was unable to identify Lewis in a photographic lineup. Although A.A. identified Lewis's photograph at the evidentiary hearing, he did so only when defense counsel showed A.A. a photograph of Lewis, unaccompanied by photographs of any other women. Second, although A.A. claimed that he could recall the details of a 13-year-old conversation with Lewis during which he was high on crack, he denied being able to recall the details of his 4-month-old conversation with Diedrich at the Sherburne County jail. As the postconviction court found, both of these facts undermined the credibility of A.A.'s testimony. Third, as the postconviction court observed, Lewis's alleged confession, as recounted by A.A., was vague. According to A.A., Lewis told him that she had "killed an old lady before." But Lewis did not identify the woman she supposedly killed, nor did she supply any other details about the killing. For these reasons, each of which finds sufficient support in the record, we conclude that the postconviction court did not abuse its discretion when it concluded that Hooper's newly discovered evidence did not satisfy the third requirement of the *Rainer* test.

■ Hooper further argues that the postconviction court abused its discretion when it failed to consider the newly discovered evidence of Lewis's alleged confession under the *Larrison* test, which applies to newly discovered evidence of false trial testimony. Under *Larrison*, a petitioner is entitled to a new trial based on false trial testimony if: (1) the court is reasonably well satisfied that the testimony given by a material witness was false; (2) without the false testimony, the jury might have reached a different conclusion; and (3) the petitioner was taken by surprise when the false testimony was given and was unable to meet it or did not know that the testimony was false until after trial. *State v. Caldwell*, 322 N.W.2d 574, 584–85 (Minn.1982) (adopting the test set forth in *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir.1928)). The first two prongs of the *Larrison* test are compulsory. The third prong is relevant but is not an "absolute condition precedent" to granting relief. *Ferguson v. State*, 645 N.W.2d 437, 445 (Minn.2002).

■ While Hooper is correct that he alleged in his petition that Lewis's confession to A.A. was newly discovered evidence of false testimony, we conclude that the postconviction court's failure to evaluate Hooper's claim under the *Larrison* test was harmless error. The postconviction court stated that it "[was] not convinced that [the] new evidence actually exist[ed]," based on its determination that "[A.A.] was not a credible witness." Because the postconviction court explicitly found that Hooper "ha[d] not proven ... the existence of new evidence that Lewis ever made this statement to [A.A.]," and A.A.'s testimony was the only evidence of Lewis's purported recantation, the court necessarily could not have been reasonably well satisfied that Lewis had testified falsely at trial. Thus, based on the postconviction court's find-

ings, Hooper's evidence would not have satisfied the first requirement of the *Larrison* test.

## IV.

■ The third question presented by this case is whether the postconviction court abused its discretion when it concluded, following an evidentiary hearing, that L.J.'s recantation did not satisfy the first prong of the *Larrison* test. At the evidentiary hearing, L.J. testified—contrary to his testimony at trial—that Hooper never told him that he killed Prazniak. The postconviction court was not reasonably well satisfied after listening to L.J.'s testimony at the evidentiary hearing that his recantation was credible.

We have consistently emphasized that "the postconviction court is in a unique position to assess witness credibility." *Opsahl v. State*, 710 N.W.2d 776, 782 (Minn. 2006). In this case, after evaluating the demeanor, disposition, and character of the recanting witness, the postconviction court concluded that L.J.'s recantation was not genuine. Specifically, the court found that L.J.'s recent convictions—one for a controlled-substance crime in 2006, and a second for theft by swindle in 2010—undermined L.J.'s testimony at the hearing that he was a reformed man, which was one of the purported reasons for L.J.'s recantation. In addition, the court observed that L.J.'s grand-jury testimony was consistent with his testimony at Hooper's trial, which cast doubt on the veracity of L.J.'s recantation. Because the record supports the court's reasons for doubting the reliability of L.J.'s recantation and the court's credibility determination is entitled to deference, we cannot say that the court abused its discretion when it denied Hooper's witness-recantation claim under the first requirement of *Larrison*.

■■■ Hooper argues that the postconviction court placed too much emphasis on L.J.'s recent convictions when it made its credibility determination. It is undisputed that L.J. was convicted of two crimes, including a crime of dishonesty, in the period between Hooper's trial and the postconviction evidentiary hearing. We have recognized that "any felony conviction is probative of a witness's credibility," *State v. Hill*, 801 N.W.2d 646, 652 (Minn. 2011) (emphasis omitted), and Hooper does not argue that L.J.'s prior convictions were inadmissible at the hearing. We therefore defer to the court's credibility determination, particularly when one of the crimes that drove the court's determination was a crime involving dishonesty. *See Hill*, 801 N.W.2d at 651 (discussing the impeachment value of so-called "infamous" crimes, including those involving dishonesty (citation omitted) (internal quotation marks omitted)); *see also State v. Norris*, 428 N.W.2d 61, 71 (Minn.1988) (noting that theft by swindle is a crime involving dishonesty). Because the court was entitled to consider L.J.'s prior convictions when it made its credibility determination, we conclude that the court did not abuse its discretion when it used L.J.'s convictions to determine that his recantation was not genuine.

## V.

The fourth question presented by this case is whether the postconviction court abused its discretion when it summarily denied relief on the remaining claims in Hooper's petition. The court concluded that the claims were either procedurally barred under *Knaffla* or were meritless.

### A.

■■■ Hooper challenges the postconviction court's summary denial of his claim that the alleged actions of the trial judge's law clerk during the trial violated his due-process right to a meaningful opportunity to present a complete defense. *See generally State v. Pass*, 832 N.W.2d 836, 841 (Minn.2013) (discussing a criminal defendant's due-process right to a meaningful opportunity to present a complete defense). The Due Process Clauses of the United States and Minnesota Constitutions protect the right of an accused "to present witnesses in his [or her] own defense." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); *see also* U.S. Const. amend. V; Minn. Const. art. I, § 7. As the Supreme Court of the United States has explained:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967).

As support for the claim, Hooper primarily relies on an affidavit from T.E. Prior to Hooper's arrest, T.E. told the police that Lewis had confessed to him that she had killed Prazniak. T.E. subsequently recanted his statement. Hooper nonetheless subpoenaed T.E. to testify at his trial. Upon receiving the subpoena, T.E.'s counsel informed Hooper's counsel that T.E. would assert his Fifth Amendment privilege against self-incrimination. According to T.E.'s affidavit, however, T.E. showed up at Hooper's trial and was prepared to testify about Lewis's alleged

confession. T.E. claims that a woman, whom he later identified as the trial judge's law clerk, approached him once he arrived and stated that he "would get 112 months in prison on [his] pending burglary case" if he testified. T.E. alleges that the conversation with the trial judge's law clerk was the reason that he did not testify that day. Based on the affidavit, Hooper argues that he is entitled to a new trial or, at a minimum, an evidentiary hearing to determine whether the trial judge's law clerk violated his due-process right to present a complete defense.

■■■■ We review the denial of a post-conviction evidentiary hearing for an abuse of discretion. See *Buckingham v. State,* 799 N.W.2d 229, 231 (Minn.2011). A postconviction court is required to hold an evidentiary hearing "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn.Stat. § 590.04, subd. 1 (2012). While doubts about whether to hold an evidentiary hearing should be resolved in favor of the petitioner, a postconviction court "need not hold an evidentiary hearing when the petitioner alleges facts that, if true, are legally insufficient to entitle him to the requested relief." *Bobo v. State,* 820 N.W.2d 511, 516 (Minn.2012).

■■■ Assuming, without deciding, that the trial judge's law clerk interfered with T.E.'s testimony and that the law clerk's interference violated Hooper's due-process rights, we conclude that the interference was harmless beyond a reasonable doubt.[1] If "an average jury ... would have

reached the same verdict" had T.E.'s testimony been admitted at the trial and the "damaging potential of the evidence fully realized," then the violation was harmless beyond a reasonable doubt. *State v. Post,* 512 N.W.2d 99, 102 (Minn.1994). In this case, Hooper's counsel was able to introduce the substance of T.E.'s testimony at Hooper's trial through the following exchanges with a police officer who had interviewed T.E. before the trial:

Q. Okay. And isn't it true that in this interview that [T.E.] told you that Chalaka Lewis told him that she got into a struggle with the old lady and said, quote, "I think I accidentally killed her"?

A. Let me look at my notes for that. Yes. He did state that.

. . .

Q. So, given the fact that everybody agrees that [T.E.] had nothing to do with this and was there innocently, isn't it fair to say that he wouldn't really have any reason to lie and to say that Chalaka Lewis said this when she didn't?

A. At the time he said it, we took it as face value that that is what she said. We had no reason to question whether he was lying or not at that point. It was early in the investigation.

. . .

Q. Okay. Now, going back to [T.E.], when Chalaka Lewis confessed to him that she committed this crime, you state in your notes that [T.E.] told you that she was acting nervous, that Chalaka

---

1. The State asserts that we should evaluate Hooper's due-process claim under the plain-error standard because Hooper did not specifically object to the challenged conduct at trial. Hooper contends that the plain-error standard does not apply because he did not learn of the alleged due-process violation until 2010. Because Hooper's claim fails under either standard, including the "less onerous" harmless-beyond-a-reasonable-doubt standard, we need not decide whether the plain-error standard applies. *Hill,* 801 N.W.2d at 657–58 (applying a harmless-error standard because it was the least onerous for a criminal defendant to satisfy and it was unclear whether plain-error or harmless-error review applied to the alleged error).

Lewis was acting nervous, and that she told [T.E.], "I did something to the old lady. I can't go back. I got into a little fight with her. I think I killed her. I think I accidentally killed her." Is that what she said to [T.E.], according to your notes?

A. That's what [T.E.] told me she said to him.

Q. Okay. And you have uncovered no indication that he has any hostility towards her, correct, and that he would falsely accuse her of murder, correct?

A. I'm not aware of any hostility.

The only aspects of T.E.'s putative testimony that the officer did not introduce at trial were that: (1) Lewis possessed cash that she had stolen from "the old woman"; and (2) Lewis asked T.E. to help her leave the area of the crime scene. While those facts would have provided context for T.E.'s interaction with Lewis, neither of those facts was critical to Hooper's defense that Lewis, rather than Hooper, had killed Prazniak. Because the substance of T.E.'s putative testimony was introduced at Hooper's trial and the record shows that T.E.'s live testimony would not have changed the result in light of all of the evidence presented at trial, we conclude that there is no " 'reasonable possibility that the [error] complained of might have contributed to the conviction.' " *State v. DeRosier,* 695 N.W.2d 97, 106 (Minn.2005) (alteration in original) (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). Accordingly, the postconviction court did not abuse its discretion when it denied Hooper's due-process claim without an evidentiary hearing.

### B.

 Hooper also challenges the postconviction court's summary denial of his claims based on C.B.'s and C.K.'s alleged recantations of their trial testimony. The postconviction court denied Hooper's request for an evidentiary hearing because Hooper had previously litigated these claims in his second petition for postconviction relief, which also asserted that C.B. and C.K. had recanted their testimony. The postconviction court therefore held that the *Knaffla* rule barred Hooper from relitigating the claims in his third petition for postconviction relief.

 "The *Knaffla* rule provides that when a petition for postconviction relief follows a direct appeal of a conviction, all claims raised in the direct appeal and all claims of which the defendant knew or should have known at the time of the direct appeal are procedurally barred." *Buckingham,* 799 N.W.2d at 231. The *Knaffla* rule also bars consideration of claims that *were raised,* or could have been raised, in a previous postconviction petition. *See Wayne v. State,* 601 N.W.2d 440, 441 (Minn.1999). A court may only consider an otherwise *Knaffla*-barred claim in two circumstances: "if (1)the defendant presents a novel legal issue or (2) the interests of justice require the court to consider the claim." *Buckingham,* 799 N.W.2d at 231.

In his brief to this court, Hooper does not dispute that he previously raised these same claims in his second petition for postconviction relief. Nor does he argue that the claims satisfy either of the *Knaffla* exceptions.[2] *See Brown v. State,* 746

---

**2.** We have yet to decide whether the *Knaffla* exceptions survive the passage of the 2005 amendments to the postconviction statute. *See, e.g., Sontoya v. State,* 829 N.W.2d 602, 604 n. 3 (Minn.2013) (declining to address

whether the exceptions to the *Knaffla* rule remain applicable to petitions for postconviction relief because the State did not raise the issue); *see also Andersen v. State,* 830 N.W.2d 1, 8 n. 3 (Minn.2013) (declining to reach the

N.W.2d 640, 642 (Minn.2008) ("Although there are two exceptions to *Knaffla*, we decline to apply those exceptions if they are not raised by the petitioner." (citations omitted)). Rather, he argues that the *Knaffla* rule does not prohibit a postconviction court from considering the facts underlying *Knaffla*-barred claims when evaluating new claims brought in a subsequent petition. In other words, Hooper argues that the postconviction court should have considered his *Knaffla*-barred claims as "corroborating evidence in support of the claims that the [c]ourt did consider."

Framed that way, Hooper's argument is not frivolous—but he did not frame the argument the same way before the postconviction court. Rather, his third petition alleges that he is "entitled to a new trial due to [C.B.'s] recantation of his trial testimony because the jury might have found Hooper not guilty if [C.B.] had not testi-

fied." The petition likewise alleges that C.K.'s recantations of his trial testimony entitle Hooper to a new trial "because the jury might have found Hooper not guilty if [C.K.] had not testified." Therefore, Hooper's third petition sought relief based on claims that he had already raised in a previous petition—precisely the type of relitigation that the *Knaffla* rule is designed to prevent. *See Townsend v. State*, 723 N.W.2d 14, 19 (Minn.2006) (stating that the *Knaffla* rule is "intended to foster" finality and efficiency); *Torres v. State*, 688 N.W.2d 569, 572 (Minn.2004) (explaining that the *Knaffla* rule "preserves the goals of finality and efficiency where appropriate and overrides them only where necessary in the interests of justice"). Accordingly, the postconviction court did not abuse its discretion when it concluded that the *Knaffla* rule barred consideration of Hooper's previously litigated recantation claims.[3]

---

issue of "whether the *Knaffla* exceptions remain applicable to petitions for postconviction relief" because the State did not raise the issue); *Berkovitz v. State*, 826 N.W.2d 203, 210 n. 3 (Minn.2013) (concluding that this court need not address "whether the exceptions to the *Knaffla* rule survive the 2005 amendment to the postconviction statute" because the petitioner's claims were clearly procedurally barred). The uncertainty is based on Minn.Stat. § 590.01, subd. 1, which states that "[a] petition for postconviction relief after a direct appeal has been completed may not be based on grounds that could have been raised on direct appeal of the conviction or sentence." While the legal significance of the foregoing text in subdivision 1 has yet to be determined—that is, whether it constitutes an independent procedural bar similar to the *Knaffla* rule without incorporating either of *Knaffla*'s exceptions—the provision applies only to those "grounds that could have been raised on *direct appeal* of the conviction or sentence." *Id.* (emphasis added). The provision therefore has no application to claims that were raised, or could have been raised, only in a *previous postconviction petition*.

3. Even if Hooper had argued before the postconviction court that the court should have

considered C.B.'s and C.K.'s alleged recantations as corroborating evidence of the other claims in his petition, the result in this case would remain the same. The postconviction court's findings suggest that consideration of C.B.'s and C.K.'s alleged recantations would not have changed its view that A.A.'s testimony about Lewis's confession was "extremely doubtful" and that L.J.'s recantation was not genuine, nor would it have changed our conclusion that the postconviction court did not abuse its discretion when it denied Hooper's third petition for postconviction relief.

We also note that the State has not raised Minn.Stat. § 590.04, subd. 3 (2012), which states that "[t]he court may summarily deny a second or successive petition for similar relief on behalf of the same petitioner and may summarily deny a petition when the issues raised in it have previously been decided by the ... Supreme Court in the same case." Because the State has failed to assert the applicability of subdivision 3 in this case, we express no opinion about whether it provides independent support for the postconviction court's decision to summarily deny Hooper's witness-recantation claims.

## C.

 Hooper fares no better on his claim that the State violated the rule from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to disclose to him that: (1) C.B. initially told the police that Hooper did not confess; (2) the police showed crime-scene photographs to C.B. during their conversation; and (3) a detective promised to pay $800 to C.B. in exchange for his testimony at Hooper's trial. Hooper's evidence in support of his claim consists of C.B.'s affidavit and an affidavit from a private investigator that recounts the investigator's conversations with C.B. and repeats the substance of the facts contained in C.B.'s affidavit. The postconviction court concluded that Hooper's *Brady* claim was *Knaffla*-barred. We agree.

The *Knaffla* rule bars consideration of Hooper's *Brady* claim if he raised, *or could have raised,* the claim on direct appeal or in a previous postconviction petition. *Doppler v. State,* 660 N.W.2d 797, 802 (Minn.2003). Here, Hooper's *Brady* claim is *Knaffla*-barred because he either knew, or should have known, of the facts underlying the claim when he filed his second petition for postconviction relief. We have already explained that Hooper raised C.B.'s alleged recantation in his second petition for postconviction relief. *See Hooper II,* 680 N.W.2d at 94. As the postconviction court found, "[i]t is difficult

to believe that the issue of witness 'payoff' from the State did not arise while [C.B.] was discussing his perjured and purchased testimony with [Hooper's] counsel" prior to the filing of Hooper's second petition. We agree with the postconviction court that Hooper, at a minimum, should have known about his potential *Brady* claim when he filed his second petition for postconviction relief. Accordingly, we conclude that the postconviction court did not abuse its discretion when it decided that Hooper's *Brady* claim was barred by the *Knaffla* rule.

## VI.

 The final question presented by this case is whether the chief judge of the Fourth Judicial District erred when he denied Hooper's motion to remove all current and former judges of the Fourth Judicial District for cause.[4] Hooper argued in his removal motion that none of the current or former judges of the Fourth Judicial District could decide his third petition for postconviction relief because of the potential conflict of interest created by his claim alleging that the trial judge's law clerk improperly dissuaded T.E. from testifying at Hooper's trial. According to Hooper, any reasonable person with knowledge of all of the facts underlying his due-process claim would reasonably question the impartiality of the entire Fourth Judicial District bench.

4. As a threshold matter, the State argues that Hooper has waived appellate review of the claim because "the proper remedy for the denial of a notice to remove is a writ of prohibition" and it is undisputed that Hooper did not avail himself of that remedy. The State is correct that a defendant's failure to seek a writ of prohibition constitutes waiver of further appellate review "when the issue involves the right of *peremptory removal.*" *State v. Dahlin,* 753 N.W.2d 300, 304–05 (Minn.2008) (emphasis added). However, we have never decided whether the waiver rule

extends to a defendant's failure to seek a writ of prohibition when the question involves the removal of a judge *for cause.* We need not resolve that question in this case because, as we explain below, Hooper's removal claim fails on its merits. *See State v. Burrell,* 743 N.W.2d 596, 601 (Minn.2008) (considering whether the State's reasons for seeking a judge's removal for cause were sufficient without deciding whether a writ of prohibition was the exclusive mechanism for seeking review).

"A motion to remove for cause is committed to the discretion of the trial court and this court will reverse only for an abuse of that discretion." *Hooper II,* 680 N.W.2d at 93. Minnesota Rule of Criminal Procedure 26.03, subdivision 14(3), which governs requests to remove a judge for cause, states that "[a] judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct." Minn. R.Crim. P. 26.03, subd. 14(3). The Code of Judicial Conduct, in turn, states that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned." Minn. R. Jud. Conduct 2.11(A). However, "[t]he mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *State v. Burrell,* 743 N.W.2d 596, 601–02 (Minn.2008).

As the chief judge noted in his order denying Hooper's motion, the cases requiring the recusal of an entire bench have involved unique facts—such as a direct threat or injury to all of the judges in the district—that are not present in this case. *See In re Nettles,* 394 F.3d 1001, 1002–03 (7th Cir.2005) (concluding that the recusal of all of the judges in the Northern District of Illinois was required when the defendant was on trial for threatening to blow up the federal courthouse in Chicago); *Nichols v. Alley,* 71 F.3d 347, 350–52 (10th Cir.1995) (concluding that the "extraordinary circumstances" surrounding the Oklahoma City bombing warranted the recusal of all of the judges in the Western District of Oklahoma from presiding over the defendant's criminal trial). Hooper speculates, but does not offer any evidence, about personal relationships between the judges of the Fourth Judicial District and the trial judge's law clerk. Such speculation cannot serve as a basis to require the recusal of a single judge, let alone all of the judges in the Fourth Judicial District. *See Clemens v. U.S. Dist. Court for Cent. Dist. of Cal.,* 428 F.3d 1175, 1180 (9th Cir.2005) ("Given that mandatory disqualification of a single judge is not warranted simply because of a professional relationship with a victim, it follows *perforce* that disqualification of an entire district is not justified except under highly exceptional circumstances . . . ."). Accordingly, we conclude that the chief judge of the Fourth Judicial District did not abuse his discretion when he denied Hooper's motion to remove all current and former judges of the Fourth Judicial District for cause.

## VII.

For the foregoing reasons, we affirm the postconviction court's denial of Hooper's third petition for postconviction relief.

Affirmed.

LILLEHAUG, J., took no part in the consideration or decision of this case.