STATE OF MINNESOTA

IN SUPREME COURT

A14-1186

Court of Appeals                                                                    Dietzen, J.
                                          Concurring in part and dissenting in part, Gildea, C.J.
                                                                                and Anderson, J.
                                                                          Took no part, Chutich J.

Lane Francis Weitzel,

               Appellant,

vs.                                                              Filed:  August 10, 2016
                                                                Office of Appellate Courts
State of Minnesota,

               Respondent.
                          _____

Cathryn Middlebrook, Chief Appellate Public Defender, Sharon E. Jacks, Assistant
Public Defender, Kathryn J. Lockwood, Assistant Public Defender, Saint Paul,
Minnesota, for appellant.

Lori Swanson, Attorney General, Saint Paul, Minnesota; and,

Anthony C. Palumbo, Anoka County Attorney, Kelsey R. Kelley, Assistant County
Attorney, Debra J. Hilstrom, Assistant County Attorney, Anoka, Minnesota, for
respondent.


                          _____

                          S Y L L A B U S

        When the State fails to raise the time limits in Minn. Stat. § 590.01, subd. 4(a), (c)

(2014), as an affirmative defense, the postconviction court has the discretion to raise the

time limit on its own motion to control its docket.  Before ruling on the timeliness issue,

1

however, the postconviction court must give the parties notice and afford them an opportunity to be heard.

Reversed and remanded.

O P I N I O N

DIETZEN, Justice.

In 2007, appellant Lane Francis Weitzel pleaded guilty and was convicted of one count of failure to register as a predatory offender in violation of Minn. Stat. § 243.166, subd. 5(a) (2014). In 2014, he filed a petition for postconviction relief under Minn. Stat. § 590.01 (2014), alleging his guilty plea was inaccurate and should be withdrawn in the interests of justice. The postconviction court denied the petition on the ground that it was untimely under Minn. Stat. § 590.01, subd. 4(c). On appeal, Weitzel argued the postconviction court was required to consider his petition on the merits because the State forfeited its right to assert subdivision 4(c) as an affirmative defense.[1] The court of appeals affirmed. *Weitzel v. State*, 868 N.W.2d 276, 282 (Minn. App. 2015). We conclude that a postconviction court may raise the subdivision 4(c) time limit on its own motion to control its docket, so long as the court gives notice to the parties and affords them an opportunity to be heard. Because the postconviction court failed to provide the required notice and opportunity to be heard, we reverse and remand.

---

[1] We recently clarified the distinction between waiver and forfeiture. *State v. Beaulieu*, 859 N.W.2d 275, 278 n. 3 (Minn. 2015). In *Beaulieu*, we observed that forfeiture is the failure to make a timely assertion of a right, and waiver is the intentional relinquishment or abandonment of a known right. *Id.* (citing *United States v. Olano*, 507 U.S. 725, 733 (1993)). Consistent with this distinction, we use the word "forfeiture" when referring to a failure to make a timely assertion of a right.

2

Weitzel was obligated to register as a predatory offender due to a 1992 conviction for second-degree criminal sexual conduct. In September 2006, the State charged Weitzel with failure to register, in violation of Minn. Stat. § 243.166, subd. 5(a). The complaint alleged that around May 24, 2006, Weitzel knowingly violated the statute by failing to notify the Bureau of Criminal Apprehension (BCA) of an address change within 5 days. Weitzel submitted a verification letter to the BCA listing an address in the City of Ramsey, Minnesota. Seven months later, the BCA sent an address verification letter to the Ramsey address. When the letter was returned to the post office as undeliverable, the police began an investigation. The police went to the Ramsey address and spoke with the homeowner, who stated that she had evicted Weitzel in October 2005. A records check revealed that the BCA had not received a change of address form as required by statute.

In April 2007, Weitzel and the State reached a plea agreement. Weitzel agreed to plead guilty to the offense in exchange for the State agreeing to support a sentence at the lower end of the presumptive range and a dispositional departure of probation. As part of his factual basis, Weitzel admitted that he did not tell any law enforcement agency or the BCA that he had moved from Ramsey to Fridley. The district court accepted Weitzel's guilty plea, entered judgment of conviction of failure to register as a predatory offender, and imposed a sentence of 17 months, but stayed execution of the sentence and placed Weitzel on probation for 5 years. Weitzel did not appeal. The district court discharged Weitzel from probation in March 2010.

In March 2014, Weitzel filed a petition for postconviction relief seeking to withdraw his guilty plea on the ground that his plea was inaccurate and invalid because it lacked an adequate factual basis. Specifically, Weitzel argued that his statement in the plea colloquy, in which he admitted that he provided the Ramsey address to Anoka County Corrections, satisfied his reporting requirement and was incompatible with a finding of guilt. Weitzel alleged his petition was timely filed under Minn. Stat. § 590.01 because his interests-of-justice claim under Minn. Stat. § 590.01, subd. 4(b)(5), arose less than 2 years before he filed the petition. *See Id.*, subd. 4(c). The State denied the allegations in the petition and claimed the petition failed to state a claim entitling Weitzel to relief under the postconviction statute. The State did not raise the untimeliness of Weitzel's petition to the postconviction court.

The postconviction court denied the petition, concluding that Weitzel's claim arose no later than September 7, 2011, when Weitzel learned he had a right to appeal and requested that the State Public Defender's Office review his case. Accordingly, the court held that the petition was filed after the expiration of the time limit in section 590.01, subdivision 4(c) (requiring that "[a]ny petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises"). Alternatively, the court concluded that Weitzel had failed to establish that his claim had substantive merit.

The court of appeals affirmed, concluding that a postconviction court may raise subdivision 4(c) on its own motion, even if the State forfeited its right to assert subdivision 4(c) as an affirmative defense, provided that the court first gives the parties

4

notice of its intent to consider the issue and an opportunity to present their respective positions. *Weitzel*, 868 N.W.2d at 277, 279-81. Although the court of appeals acknowledged that the postconviction court erred when it failed to provide the parties with notice and an opportunity to be heard on the applicability of Minn. Stat. § 590.01, subd. 4(c), the court of appeals concluded the error was harmless. *Weitzel*, 868 N.W.2d at 281.

I.

Weitzel argues that the postconviction court erred by denying his petition as untimely under Minn. Stat. § 590.01, subd. 4(c). According to Weitzel, the postconviction court was required to consider his petition on the merits because the State forfeited its right to assert subdivision 4(c) as an affirmative defense.

We review the denial of postconviction relief for an abuse of discretion. *Colbert v. State*, 870 N.W.2d 616, 621 (Minn. 2015). Our review of legal issues is de novo, but our review of factual matters is limited to whether there is sufficient evidence in the record to support the postconviction court's findings. *Brown v. State*, 863 N.W.2d 781, 786 (Minn. 2015); *see also Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012).

When a petitioner seeks to withdraw a guilty plea made after sentencing the request must be raised in a petition for postconviction relief. *James v. State*, 699 N.W.2d 723, 727 (Minn. 2005). A defendant does not have an automatic right to withdraw a valid guilty plea. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). The Minnesota Rules of Criminal Procedure do allow, however, a defendant to withdraw a guilty plea after sentencing if "withdrawal is necessary to correct a manifest injustice." Minn. R.

5

Crim. P. 15.05, subd. 1. A manifest injustice occurs when the record, including the factual basis for the plea, fails to satisfy the accuracy requirement for a valid guilty plea. *Theis*, 742 N.W.2d at 646-49. A defendant bears the burden of proving his plea was invalid. *Barrow v. State*, 862 N.W.2d 686, 689 (Minn. 2015).

The postconviction statute provides that "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Minn. Stat. § 590.01, subd. 4(a). Section 590.01, subdivision 4(b)(5), provides that the court may hear a petition outside of the 2-year limitation period if "the petitioner establishes to the satisfaction of the court that the petition is not frivolous and is in the interests of justice." But a petition invoking an exception under subdivision 4(b) must be filed within 2 years of the date the interests-of-justice claim arises. *Id.*, subd. 4(c); *Sanchez v. State*, 816 N.W.2d 550, 557 (Minn. 2012); *Rickert v. State*, 795 N.W.2d 236, 242 (Minn. 2011). A petitioner's claim "arises when the petitioner knew or should have known that he had a claim." *Id.* at 560. This is an objective, rather than a "subjective, actual knowledge standard." *Id.* at 558.

Previously, we have considered whether the limitation periods in Minn. Stat. § 590.01, subd. 4(a), (c), are jurisdictional. *Hooper v. State*, 838 N.W.2d 775 (Minn. 2013); *Carlton v. State*, 816 N.W.2d 590 (Minn. 2012). In *Carlton*, we concluded that the time limit contained in Minn. Stat. § 590.01, subd. 4(c), did not operate as a jurisdictional bar, but was comparable to a statute of limitations that could be asserted as an affirmative defense by the State. 816 N.W.2d at 600-02. We further concluded that

6

the State forfeits its right to raise subdivision 4(c) as an affirmative defense when it fails to make a timely assertion of that right. *Id.* at 606. In *Hooper*, we considered the related question of whether the 2-year limitation period in Minn. Stat. § 590.01, subd. 4(a), operates as a jurisdictional bar. 838 N.W.2d at 780-82. We concluded that the limitation period in subdivision 4(a) does not restrict the subject matter jurisdiction of the postconviction court. *Id.* at 782. We reasoned that because the State had failed to raise subdivision 4(a) as an affirmative defense, the State forfeited its right to assert the defense for the first time on appeal. *Id.* at 780-82. We reaffirm our decisions in *Carlton* and *Hooper* that the limitation periods in section 590.01, subdivision 4(a), (c), are not jurisdictional bars that restrict the subject matter jurisdiction of the postconviction court. Instead, they are statutes of limitations that the State may assert as an affirmative defense. We also reaffirm that the State forfeits its right to raise subdivision 4(a) or 4(c) as an affirmative defense when it fails to make a timely assertion of that right.

*Carlton* and *Hooper* do not address the question of whether a forfeiture of *the State's right* to raise subdivision 4(a) or 4(c) as an affirmative defense precludes the postconviction court from exercising *the court's authority* to control its docket by considering the applicability of subdivision 4(a) and (c) on its own motion. But the United States Supreme Court has considered an analogous question in the context of the federal habeas statutes in *Day v. McDonough*, 547 U.S. 198 (2006), and *Wood v. Milyard*, ___ U.S. ___, 132 S. Ct. 1826 (2012).

In *Day*, the court considered the 1-year limitation period for filing a petition for a writ of habeas corpus in the Antiterrorism and Effective Death Penalty Act of 1996

7

(AEDPA), 28 U.S.C. § 2244(d)(1)(A)(2012). *Day*, 547 U.S. at 201. The AEDPA statute of limitations was enacted to promote "judicial efficiency and conservation of judicial resources, [to] safeguard the accuracy of state court judgments by requiring resolution of constitutional questions while the record is fresh, and [to] lend finality to state court judgments within a reasonable time." *Id.* at 205-06 (quoting *Acosta v. Artuz*, 221 F.3d 117, 123 (2nd Cir. 2000)). Day filed a petition for a writ of habeas corpus approximately 3 weeks after the statute of limitations had expired. *Id.* at 201. Due to a miscalculation of the untolled time, the State's answer asserted the habeas petition was timely filed. *Id.* The district court raised the issue of timeliness sua sponte and, after giving Day notice and an opportunity to be heard, dismissed the petition as untimely. *Id.* at 201-02. On appeal, Day argued the State forfeited its right to assert the 1-year statute of limitations when it failed to assert that right in a timely manner. *Id.* at 207. In response, the State argued that the considerations underlying the enactment of the AEDPA, including expeditious handling of habeas proceedings, supported a rule that allowed a court to "exercise discretion in each case to decide whether the administration of justice is better served by dismissing the case on statute of limitations grounds or reaching the merits of the petition."[2] *Id.* at 208. Persuaded by the State's argument, the Supreme Court affirmed, concluding that a district court has the discretion to consider on its own motion the timeliness of a state prisoner's habeas petition and to dismiss the petition as untimely under the federal statute's one-year statutes of limitation period. *Id.* at 209-10. The

---

[2] The *Day* Court acknowledged that considerations of comity and finality also motivated the enactment of the AEDPA. *Day*, 547 U.S. at 208.

Court compared the 1-year statute of limitation with other affirmative defenses such as "exhaustion of state remedies, procedural default, and non-retroactivity." *Id.* at 205. The Court noted that the judge could have informed the State of the obvious computation error and granted leave to amend the State's answer. *Id.* at 209. According to the Court, there is no material difference between allowing the State to amend its answer and allowing the court to raise the timeliness issue on its own motion. *Id.* But the Court cautioned that before raising the issue of timeliness on its own motion, the district court must give notice to the parties and give them an opportunity to be heard. *Id.* at 210.

In *Wood*, the State was aware of the statute of limitations defense available to it and the arguments that could be made in support of that defense. ___ U.S. at ___, 132 S. Ct. at 1830-31. But the State twice informed the district court that it would not challenge the timeliness of Wood's petition. *Id.* at ___, 132 S. Ct. at 1830-31. The Supreme Court reversed and remanded, concluding that the State deliberately waived the statute of limitations defense.[3] *Id.* at ___, 132 S. Ct. at 1832-34. In doing so, the Court reaffirmed the federal district court's authority to consider a forfeited untimeliness defense when

---

[3]     In its answer to Weitzel's petition, the State asserted that, "The allegations of the Petition for Post Conviction Relief fail to state a claim entitling the Petitioner to relief as provided by the Post Conviction Remedy Act, M.S. § 590.01-.06." Although the State's answer is insufficient to invoke the statute of limitation in subdivision 4(c), it did not expressly waive the time limits. There is no evidence that the State strategically withheld, or otherwise waived, its right to raise the time limit. Instead, the record indicates that the State failed to raise the time limit in its answer and therefore forfeited its right to assert it as a defense.

extraordinary circumstances so warrant.[4] *Id.* at ___, 132 S. Ct. at 1833-34. The Court

articulated two reasons for its holding. First, it would make little sense to treat a statute

of limitations defense differently than other constraints on federal habeas corpus

petitions. *Id.* at ___, 132 S. Ct. at 1833. Second, affording the district court discretion

was appropriate because the statute of limitation implicates values beyond the concerns

of the parties. Specifically, "[t]he AEDPA statute of limitation promotes judicial

efficiency and conservation of judicial resources, safeguards the accuracy of state court

judgments by requiring resolution of constitutional questions while the record is fresh,

and lends finality to state court judgments within a reasonable time." *Id.* at ___,

132 S. Ct. at 1833 (quoting *Day*, 547 U.S. at 205-06).

The Supreme Court's decisions in *Day* and *Wood* have been followed by other

courts that have considered the issue. *See Davis v. State*, 187 P.3d 654, 659 (Mont. 2008)

(concluding that nothing precludes a district court from raising, sua sponte, the timeliness

---

[4]     The concurrence and dissent alleges our decision in *Carlton*, 816 N.W.2d at 606, "already rejected the rule in *Wood*." We disagree for two reasons. First, *Carlton* did not address the rule announced in *Wood*. The Court in *Wood* held that both the federal district court and appellate courts have the authority to consider a forfeited untimeliness defense when extraordinary circumstances warrant doing so. ___ U.S. at ___, 132 S. Ct. at 1834. *Carlton* did not address the authority of the federal district or appellate courts to raise the untimeliness defense on its own motion. Instead, *Carlton* merely addressed whether the State's failure to raise the timeliness defense forfeited the State's right to raise the defense, and whether an appellate court may consider a statute of limitations defense where neither the State nor the district court addressed the issue.

Our decision today only adopts in part the rule announced in *Wood*. Specifically, we hold that the state district court has the authority to consider a forfeited untimeliness defense when extraordinary circumstances warrant doing so. We do not, however, extend the rule in *Wood* to the appellate courts.

of a postconviction petition); *see also Agana Beach Condo. Homeowners' Ass'n v. Mafnas*, 2013 Guam 9 ¶45 (Guam 2013) (concluding that trial courts may raise certain non-jurisdictional issues sua sponte).

We are not bound by the Supreme Court's decisions in *Day* and *Wood* because those decisions involve statutory authority that extends only to federal courts applying a federal statute. *See Danforth v. Minnesota*, 552 U.S. 264, 278-79 (2008) ("Since *Teague* is based on statutory authority that extends only to federal courts applying a federal statute, it cannot be read as imposing a binding obligation on state courts"); *Danforth v. State*, 761 N.W.2d 493, 497 (Minn. 2009) (explaining that the *Teague* rule was tailored to the unique context of federal habeas relief and therefore had no bearing on whether states could provide broader relief in their postconviction proceedings). But the time limits set forth in Minn. Stat. § 590.01, subd. 4(a), (c), were enacted to promote some of the same interests discussed in *Day* and *Wood*.[5] Specifically, they were enacted "in response to a dramatic increase in the number of postconviction petitions, many of which involved old

---

[5]    The concurrence and dissent suggests that *Day* and *Wood* offer little guidance because "[t]he rule announced in those cases was based in part on considerations of comity between federal and state sovereigns." *Infra* at C/D-1. It is true that comity was one of the interests discussed in *Day* and *Wood*. But an equally important interest was a court's ability to control its docket. For example, in *Wood* the Court said: "Due regard for the trial court's processes and time investment is also a consideration appellate courts should not overlook. It typically takes a district court more time to decide a habeas case on the merits, than it does to resolve a petition on threshold procedural grounds." ___ U.S. at ___, 132 S. Ct. at 1834. The fact that comity between federal and sovereign states is not in play here does not preclude us from considering the other important interests discussed in *Day* and *Wood*, including a court's ability to control its docket. We believe that a court's need to control its docket provides a persuasive and compelling reason to allow the court, in its discretion, to consider the time limits of subdivision 4(a) and (c) on its own motion.

11

claims brought years after a conviction was affirmed on direct appeal." *Rhodes v. State*, 875 N.W.2d 779, 783 n.2 (Minn. 2016). Moreover, it is well-established that courts have the authority "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" and that "[h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co,* 299 U.S. 248, 254-55 (1936) (explaining that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of causes on its docket").

The time limits of section 590.01, subdivision 4, are broadly written. Subdivision 4(a) provides that "[n]o petition for postconviction relief may be filed more than two years after the later of: (1) the entry of judgment of conviction or sentence if no direct appeal is filed; or (2) an appellate court's disposition of petitioner's direct appeal." Subdivision 4(c) states that "[a]ny petition invoking an exception provided in paragraph (b) must be filed within two years of the date the claim arises." There is nothing in the language of either statute that precludes the court from raising the time limits on its own motion.

Moreover, the values underlying the time limits in a postconviction proceeding are significantly different than those in an ordinary civil proceeding. On the one hand, a statute of limitation defense in a civil case specifically benefits the opposing party. *See Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348-49 (1944) (concluding that a statute of limitation defense is based on the proposition that if one person has a claim against another it would be inequitable for that person to assert such

12

claim after an unreasonable lapse of time); *Bachertz v. Hayes-Lucas Lumber Co.*, 201 Minn. 171, 176, 275 N.W. 694, 697 (1937) (explaining that the purpose of a statute of limitation is to protect defendants from being surprised by the revival of stale claims). On the other hand, the time limits in section 590.01, subdivision 4(a), (c), not only benefit the State, but also benefit the court. Specifically, the time limits in subdivision 4(a) and (c) encourage the expeditious handling of postconviction appeals and allow postconviction courts to control their docket by dismissing frivolous petitions that are clearly untimely. The time limits set forth in the statute are unique because they implicate the ability of the court to control its docket by dismissing frivolous claims.

In sum, a state district court has the authority to control the disposition of cases on its dockets with economy of time and effort for itself, for counsel, and for litigants. A rule that precludes a court from raising the time limits on its own motion because the State forfeited its right to assert the time limits as an affirmative defense would undermine the key purpose of the time limits in subdivision 4(a) and (c): allowing a court to control its docket by dismissing untimely petitions. We therefore conclude that when the State fails to raise the time limits set forth in section 590.01, subdivision 4(a) and (c), the postconviction court has the discretion to consider the time limits on its own motion in order to control its docket.[6]

---

[6] Despite the assertion to the contrary in the concurring and dissenting opinion, we do not hold that a postconviction court may raise the subdivision 4(a) and 4(c) time limits as an affirmative defense *on behalf of the State*. *Infra* at C/D-1. Instead, we hold that a postconviction court has the discretion to raise the time limits *on its own behalf* to protect its docket from frivolous petitions. *Cf. Landis*, 299 U.S. at 254-55.

Before ruling on the issue, however, the court must give notice to the parties and afford them the opportunity to be heard. *Day*, 547 U.S. at 210. Our approach provides postconviction courts with the discretion, when faced with untimely claims, to determine whether the administration of justice is better served by dismissing the case on statute of limitations grounds or by reaching the merits of the petition. *Accord Day*, 547 U.S. at 208.

We conclude that a remand is necessary to vindicate Weitzel's procedural due process rights. The postconviction court failed to give the parties notice that it intended to consider on its own motion the statute of limitation in section 590.01, subdivision 4(c). Consequently, we remand the case to the postconviction court to allow the parties the opportunity to be heard on the timeliness of Weitzel's petition.

Reversed and remanded.


CHUTICH, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

GILDEA, Chief Justice (concurring in part and dissenting in part).

Even though the State did not assert the statute of limitations in Minn. Stat. § 590.01, subd. 4(a), (c) (2014), the majority concludes that the postconviction court has the discretion to raise that defense for the State. I disagree. I would follow our longstanding rule and hold that the State's failure to assert the affirmative defense prevents the defense's consideration. *E.g.*, *Rehberger v. Project Plumbing Co.*, 295 Minn. 577, 578, 205 N.W.2d 126, 127 (1973) (noting that the failure to plead an affirmative defense, such as the statute of limitations, constitutes a waiver of that defense).[1]

The majority reaches the opposite conclusion based on Supreme Court habeas cases. In my view, those cases should not drive the result here. The rule in those cases was based in part on considerations of comity between federal and state sovereigns. *See, e.g.*, *Wood v. Milyard*, ___ U.S. ___, 132 S. Ct. 1826, 1833 (2012). No such considerations are in play here. Moreover, we have already rejected the rule in *Wood*. In that case, the Supreme Court held that an appellate court could raise the statute of limitations defense for the first time on appeal. *Id.* at ___, 132 S. Ct. at 1834. That is not the rule in Minnesota. *See State v. Carlton*, 816 N.W.2d 590, 606 (2012) (holding that the State's failure to assert the statute of limitations in the postconviction statute, Minn.

---

[1] This general rule is subject to a motion to amend the relevant pleading, but the State made no such motion in this case. *See id.* ("A failure to plead an affirmative defense, without later amendment of the pleading, waives the defense.").

Stat. § 590.01, subd. 4(c), precluded the appellate court's consideration of that defense). I would extend our analysis in *Carlton* and hold that, in the absence of a motion for leave to amend, the State's failure to assert the statute of limitations in the postconviction court precludes that court's consideration of the defense. Accordingly, I would remand the matter back to the postconviction court for consideration of the merits of the petition.


ANDERSON, Justice (concurring in part and dissenting in part).

I join in the concurrence and dissent of Chief Justice Gildea.