**STATE of Minnesota, Respondent,**

v.

**Abatto AVILES–ALVAREZ, Appellant.**

No. C0–96–1423.

Court of Appeals of Minnesota.

March 25, 1997.

Review Denied June 11, 1997.

Hubert H. Humphrey, State Attorney General, Darrell C. Hill, Assistant Ramsey County Attorney, St. Paul, for respondent.

Phillip S. Resnick, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, P.J., and RANDALL and HARTEN, JJ.

## OPINION

RANDALL, Judge.

Appellant Abatto Aviles–Alvarez (Aviles) challenges the district court denial of his motion to withdraw his guilty plea on the grounds that his factual admissions did not adequately support his plea and he did not submit his plea intelligently. We affirm.

## FACTS

On May 1, 1995, St. Paul police executed a search warrant at 457 East Curtice Street. They found methamphetamine in a bedroom occupied by Jaime Santiago, who told the police that he was keeping the drugs for a person known as "Pedro." In the presence of the police, Santiago called "Pedro's" pager number and received a return call from Aviles, who agreed to pick up the drugs immediately at Santiago's home.

When Aviles arrived and began to approach the house, Santiago identified Aviles to the police as the man known as "Pedro." Santiago gave Aviles a bag containing 176 grams of methamphetamine—less than half of all the methamphetamine found in Santiago's room. Aviles accepted the bag and took it to his car. When he placed the bag in the engine compartment of his car, the police arrested him for conspiracy to sell methamphetamine.

The state charged Aviles with, and Aviles pleaded guilty to, conspiracy to commit a controlled substance crime in the first degree under Minn.Stat. §§ 152.021, subd. 1(3)

(1996), and 152.096 (1996). At the plea hearing, Aviles, a resident alien from Mexico, had an interpreter assist him. Aviles testified that he knew that Santiago had more than 50 grams of methamphetamine, that he knew the bag he accepted from Santiago contained methamphetamine, and that he intended to deliver the methamphetamine wherever Santiago requested. Aviles did not dispute that the bag contained more than 50 grams of methamphetamine. Aviles did not place that fact in issue. Instead, he claimed that he did not know exactly how much methamphetamine the bag contained.

Aviles's plea petition stated that the court could sentence Aviles to between three and thirty years in prison. In exchange for Aviles's guilty plea, the prosecutor agreed to seek a sentence at the "bottom of [the] box," or the low end of the presumptive sentence range of 81 to 91 months. Aviles testified at the plea hearing that he had reviewed his plea petition with an interpreter and understood it. Aviles also stated at that time that he understood that the court made no promises about the sentence he would receive upon pleading guilty. The court sentenced Aviles to 69 months in prison.

At the hearing on his motion to withdraw his plea, Aviles testified that his attorney at the plea hearing, Paul Schneck, had told him "he could expect" a one-year sentence. Monica Mars, Aviles's girlfriend, and Miguel Garza, an acquaintance of Aviles, testified that Aviles had told them he expected a one-year sentence upon pleading guilty. Aviles also stated at the motion hearing that Schneck had not discussed any possible defenses with him that Aviles could understand, and never informed Aviles that he could be deported as a result of his conviction.

Schneck stated by affidavit that: (1) he had discussed the possibility of a one-year sentence as a dispositional departure, but did not tell Aviles that he would serve only one year if he pleaded guilty; (2) he informed Aviles of the immigration consequences possible due to a guilty plea, i.e., that Aviles could be deported as a resident alien convicted of a felony drug offense; and (3) although he did not consider the entrapment defense "a strong issue," he believed he discussed it with Aviles.

## ISSUE

1. Did the district court err by finding Aviles's guilty plea accurate?

2. Did the district court err by finding that Aviles intelligently pleaded guilty?

## ANALYSIS

A district court has discretion in deciding whether to grant a defendant's motion to withdraw a guilty plea, and a reviewing court will not reverse a district court's denial of such a motion absent an abuse of discretion. *Kim v. State*, 434 N.W.2d 263, 266 (Minn.1989). An appellate court limits its review of a postconviction court to a determination of whether sufficient evidence exists to sustain the postconviction court's findings. *State v. Bliss*, 457 N.W.2d 385, 391 (Minn.1990).

To be valid, a guilty plea must be accurate, voluntary, and intelligent. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn.1994). A district court shall allow a defendant to withdraw a guilty plea "upon a timely motion and proof to the satisfaction of the court that withdrawal is necessary to correct a manifest injustice." Minn.R.Crim.P. 15.05, subd. 1; *see also State v. Kaiser*, 469 N.W.2d 316, 319–20 (Minn.1991) (reversing denial of motion to withdraw plea in order to correct "manifest injustice").

### I.

Aviles argues that his admissions did not support his guilty plea and that as a result, his plea was inaccurate and the district court erred in denying his motion to withdraw his guilty plea. Under Minnesota law, a person who conspires to sell 50 grams or more of methamphetamine is guilty of conspiring to commit a controlled substance crime in the first degree. Minn.Stat. §§ 152.021, subd. 1(3) (1996) and 152.096 (1996). "Sell" within the meaning of section 152.021, subd. 1(3), includes agreeing or intending to deliver. Minn.Stat. § 152.01, subd. 15a(1)–(3) (1996).

Here, Aviles testified that he knew Santiago had more than 50 grams of methamphetamine and knew the bag he accepted contained methamphetamine. Aviles stated that he intended to deliver the methamphetamine according to instructions from Santiago. Aviles told the district court that he did not know exactly how much methamphetamine the bag contained. He did not dispute that the bag contained more than 50 grams.

Aviles contends that his plea was not accurate because he did not know how much methamphetamine he received from Santiago. We understand Aviles's theory, but he has not presented a case to set aside his guilty plea.

█ A defendant need not know the exact quantity of an illegal drug he sells to be guilty of the crime of conspiring to sell methamphetamine in the first degree. A defendant is guilty of conspiracy where he agrees to commit a crime and he or his co-conspirator does an overt act in furtherance of the conspiracy. Minn.Stat. § 609.175, subd. 2 (1996). Minnesota law makes it a crime to sell *any* amount of methamphetamine. Minn.Stat. § 152.024, subd. 1(1) (1996). Because Aviles admitted that he agreed to deliver a bag of methamphetamine for Santiago, went to Santiago's home to pick up the drugs, and does not dispute that he received more than 50 grams of methamphetamine, the district court properly found Aviles guilty of conspiracy to sell methamphetamine regardless of whether Aviles knew the amount he received from Santiago. As the district court observed:

> While the amount is an essential element of the crime, the defendant's *knowledge* of the amount is not an essential element. * * * For purposes of a guilty plea, it is sufficient that the defendant acknowledge that the State has evidence that [50 grams] was exceeded and that the defendant does not dispute that amount.[1]

(Emphasis in original.)

This case is easily distinguishable from *State v. Bluhm,* 460 N.W.2d 22 (Minn.1990),

which Aviles cites for the proposition that a defendant's knowledge of the amount of a controlled substance involved in the crime charged is an essential element of the offense. In *Bluhm,* the district court denied a defense motion to instruct the jury that a sale of 10 or more grams of cocaine was an essential element of the crime of selling 10 or more grams of cocaine. *Id.* at 23. The district court reasoned that whether the amount exceeded 10 grams or not related only to sentencing. *Id.* The supreme court reversed the district court on this issue on the ground that a sale in the required amount did constitute an essential element of the crime charged. *Id.* at 24. In *Bluhm,* the supreme court ruled the jury should have been allowed to decide from the evidence how much cocaine was at issue. *Id.*

Here, in contrast, Aviles did not go to trial to dispute the amount of methamphetamine involved. If he had, he would have had the right to have a jury decide the amount of methamphetamine as a fact question. Instead, Aviles concedes he received more than 50 grams of methamphetamine. Aviles simply claims he did not know exactly what amount he accepted.

We conclude the record fairly supports Aviles's guilty plea. The district court did not abuse its discretion in denying Aviles's motion to withdraw his guilty plea as inaccurate.

## II.

█ Aviles further contends that he did not plead guilty intelligently and that the district court therefore erred by denying his motion to withdraw his guilty plea. A defendant pleads guilty intelligently if he does so knowing and understanding the charges against him, the rights he waives by pleading guilty, and the consequences of his plea. *Brown v. State,* 449 N.W.2d 180, 182 (Minn. 1989).

---

1. If a defendant intends to steal a gold watch he truly believes is worth only $200, one can say he intended to commit only a misdemeanor. If, however, a fair and concededly accurate appraisal of the watch shows the watch to be worth $2,000, a district court judge may properly accept a plea of guilty of felony theft as long as the defendant admits that he intended to steal the watch and does not place the value of the watch in issue. The defendant's intent to commit only a misdemeanor does not preclude conviction of a felony.

■ Aviles asserts that he did not understand the consequences of his plea because he thought his guilty plea would result in a sentence of one year or less rather than the 69–month sentence he received. Aviles maintains that Schneck told him that he could expect to serve one year or less, and did not tell Aviles of the three-year mandatory minimum. Aviles also produced testimony from a girlfriend and acquaintance at the hearing on his motion to withdraw his plea to corroborate his testimony that he expected a one-year sentence.

We disagree. The record adequately supports the district court's finding that Aviles knew and understood the potential penalty to result from his guilty plea. The plea petition provides that upon pleading guilty the prosecutor would recommend a sentence at the "bottom of [the] box," *i.e.*, at the low end of the 81 to 91–month presumptive sentence range. Aviles admitted at the plea hearing that he had reviewed the plea petition with counsel and an interpreter and that he understood it. At the same plea hearing, Aviles admitted that he understood that the court "made no promises" about the sentence he might receive upon pleading guilty. Although Schneck stated in his affidavit that he discussed a one-year sentence with Aviles in the context of a dispositional departure, he stated he did not tell Aviles that he definitely would serve only one year if he pleaded guilty. The district court was entitled to make credibility assessments of Aviles's statements, and of Schneck's statements.

Aviles further contends that he did not understand the consequences of his plea because he did not know that a guilty plea might subject him to deportation. Aviles testified at the hearing on his motion to withdraw his guilty plea that Schneck never discussed with him the possibility of deportation following a guilty plea. Schneck stated in his affidavit, however, that he advised Aviles of the "potential immigration consequences that might result from a guilty plea," and specifically told Aviles that he could be deported following a conviction due to his status as a resident alien.

■ The record shows that after stating Schneck had never discussed deportation with him, Aviles said that he had reviewed his plea petition without the aid of an interpreter. Aviles stated the contrary at the plea hearing, where he acknowledged reviewing the petition with the assistance of his interpreter. Where, as here, credibility determinations are crucial, a reviewing court will give deference to the primary observations and trustworthiness assessments made by the district court. *Engebretson v. Commissioner of Pub. Safety*, 395 N.W.2d 98, 100 (Minn.App.1986) (affirming district court finding even though contrary to testimony of three witnesses); *see also* Minn. R. Civ. P. 52.01 (providing that in reviewing findings of fact, "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses"). In light of the deference we accord the district court where credibility assessments are critical, we conclude the district court did not err in finding that Aviles understood that pleading guilty might subject him to deportation.

Aviles also claims that Schneck failed to inform him of any defenses available to him, specifically the defense of entrapment. Although Schneck could not recall when he discussed the defense of entrapment with Aviles, he stated in one of his affidavits that he did believe he had discussed it with Aviles.

Aviles seems to argue that he could not intelligently plead guilty because he was confused by some of the questions asked of him at the plea hearing. During the plea hearing, however, he told the district court that he understood the questions asked of him and that he understood everything that happened during the hearing. He also had an interpreter to clarify any questions he did not understand. In addition, he had the opportunity to request repetition or clarification of any questions he did not understand, as he did at the hearing on his motion to withdraw.

■ Lastly, a reviewing court will deem waived those arguments made in a postconviction petition but not raised in a party's appellate brief. Aviles's brief does not raise several of the arguments asserted in his petition for postconviction relief and included in

Aviles's statement of the case. *Scruggs v. State*, 484 N.W.2d 21, 24 n. 1 (Minn.1992). Accordingly, we decline to address those arguments.

## DECISION

Aviles has not shown that the district court abused its discretion by finding that he pleaded guilty accurately and intelligently. Thus, the district court properly denied Aviles's motion to withdraw his guilty plea.

We are not persuaded, on this record, that withdrawal of Aviles's plea is necessary to correct a manifest injustice.

**Affirmed.**