*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0553**

State of Minnesota,
Respondent,

vs.

Darrell Mandall Nickerson, Sr.,
Appellant

**Filed August 3, 2015
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-12-23535

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Richard Schmitz, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Hudson, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges the district court's denial of his pre- and post-sentencing requests to withdraw his guilty plea. We affirm.

## FACTS

On October 21, 2013, appellant Darrell Mandall Nickerson, Sr. pleaded guilty to aiding and abetting second-degree murder and aiding and abetting attempted first-degree murder. The second-degree murder charge arose from a robbery, during which one victim was shot and killed; the attempted first-degree murder charge resulted from the shooting of a second victim during the robbery. At the plea hearing, the following exchange occurred between Nickerson and the district court:

> THE COURT: Mr. Nickerson, you've heard what your attorney has said about the agreement that has been reached in this case. Is that your understanding of the agreement?
> NICKERSON: Yes, sir.
> THE COURT: Do you want to plead guilty on that basis?
> NICKERSON: Yes, sir.

Nickerson was then sworn in and questioned by one of his two attorneys. The following exchanges occurred:

> ATTORNEY: [showing two plea petitions] Mr. Nickerson . . . Did you and I and [your other attorney] go over this, actually on two different occasions?
> NICKERSON: Yes.
> ATTORNEY: Did we explain to you the contents of each of these four-page documents?
> NICKERSON: Yes.
> . . . .
> ATTORNEY: Do you understand the negotiation that we just put on the record . . . ?
> NICKERSON: Yes.
> ATTORNEY: And you understand that this agreement binds all the parties. You can't come back at the sentencing and say: I don't want to take this; I wasn't explained what was going on. Do you understand that?
> NICKERSON: Yes.
> . . . .

2

ATTORNEY:  So you understand that this agreement basically binds all the parties, and as long as the [c]ourt follows the agreement, that's what's going to happen?  Do you understand that?
NICKERSON:  Yes.
ATTORNEY:  Have you had enough time to talk to both myself, [your other attorney], and . . . the investigator on our case, so that you understand what's going on here this morning?
NICKERSON:  Yes.
. . . .
ATTORNEY:  Is your mind clear so that you understand the consequences of pleading guilty here today?
NICKERSON:  Yes.
ATTORNEY:  Did I and [your other attorney] explain all four pages of both these documents . . . ?
NICKERSON:  Yes.
ATTORNEY: Did you sign each page of both four-page documents?
NICKERSON:  Yes.
ATTORNEY:  Do you have any questions of either myself or the [c]ourt of the rights that you're giving up here today?
NICKERSON:  No.
ATTORNEY:   And, again, have you had enough time so that you understand the consequences of pleading guilty here today?
. . . .
NICKERSON:  Yes.

Nickerson then provided a factual basis for his plea, specific to each element of the offenses with which he was charged.  The factual basis was elicited using leading questions from one of Nickerson's attorneys.  Nickerson also acknowledged that he was giving up the right to claim the defense of self-defense.

On November 12, 2013, Nickerson met with a probation officer as part of his pre-sentence investigation.  The presentence investigation report included the following paragraph:

**Defendant's Version:**  The defendant declined the opportunity to discuss this offense but later stated that he was being sent to prison for something he did not do; however, rather than risk life in prison if convicted at trial, he decided to accept the plea negotiation.  He reports that he is comfortable

with serving the negotiated prison term, wanting only to get back to his children someday. He says he is also sorry for what happened to the victim but, at the same time, should not have to serve such a lengthy prison term for an offense that he did not commit.

Nickerson's sentencing was set for January 8, 2014. Nickerson first informed his attorney of a desire to withdraw his guilty plea on December 19 or 20, 2013. Nickerson moved to withdraw his guilty plea on January 7, 2014. Nickerson indicated that he felt pressured to accept the plea agreement because of the possibility of a life sentence. He also stated that he felt pressured by his attorneys into responding "yes" to the questions posed at his plea hearing. The state responded by pointing out the prejudice the state would suffer if plea withdrawal were permitted, because the state was prepared to go to trial (e.g., had subpoenaed 35 witnesses) at the time of the plea, but had relied on Nickerson's plea.

Nickerson's motion was denied. He filed a notice of appeal but then asked for a stay of the appeal in order to pursue postconviction relief. Nickerson's petition for postconviction relief was denied. He now appeals.

**D E C I S I O N**

*Manifest injustice*

Nickerson argues that the district court erred in denying his petition for postconviction relief. Post-sentencing, a district court shall allow a defendant to withdraw his guilty plea upon proof that withdrawal is necessary to correct a manifest injustice. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010); *accord* Minn. R. Crim. P. 15.05, subd. 1. A manifest injustice exists if the plea was not valid—not accurate,

4

voluntary, and intelligent. *Raleigh*, 778 N.W.2d at 94. The defendant bears the burden of showing his plea was invalid. *Id*. If credibility determinations are crucial in determining whether a guilty plea is invalid, "a reviewing court will give deference to the primary observations and trustworthiness assessments made by the district court." *State v. Aviles-Alvarez*, 561 N.W.2d 523, 527 (Minn. App. 1997), *review denied* (Minn. June 11, 1997). The validity of a guilty plea is reviewed de novo. *Raleigh*, 778 N.W.2d at 94.

### *Accurate*

Nickerson first argues that his plea was not accurate because the factual basis was elicited using leading questions. Our supreme court has "long discouraged this practice." *Id.* at 95. The favored format is for the district court to ask the defendant to express the factual basis in his own words. *Id*. But while leading questions are disfavored, the bottom-line requirement is that the defendant's responses must adequately establish the elements of the offense. *Id*. In *Raleigh*, the factual basis was established, just as it was here, through leading questions posed by counsel, but the supreme court nonetheless held that the defendant accurately pleaded guilty because the factual basis was sufficient. *Id.* at 96.

Nickerson makes no contention that the facts as established do not support the crimes to which he pleaded guilty. His objection goes to form more than substance. But according to *Raleigh*, use of leading questions alone does not lead to the conclusion that a factual basis was inaccurate when all of the elements of the crime have been established. *See id.* ("[T]he factual basis for Raleigh's plea is sufficient, despite its disfavored

format."). The facts as established provide sufficient basis for Nickerson's plea, and therefore the accuracy requirement is fulfilled.

### *Voluntary*

Nickerson next argues that his plea was not voluntary because he only acquiesced to his counsel's "badgering." "To determine whether a plea is voluntary, the court examines what the parties reasonably understood to be the terms of the plea agreement. The voluntariness requirement ensures a defendant is not pleading guilty due to improper pressure or coercion." *Id.* (citation omitted). When the record "repeatedly" shows that a defendant is "making his own decision," a claim of coercion has been determined to be unsupported. *State v. Ecker*, 524 N.W.2d 712, 719 (Minn. 1994).

Nickerson's only support for his coercion claim is his own affidavit. *Ecker* controls here, and in that case the defendant had some supporting testimony for his claims of coercion on the part of his counsel. *Id.* Nickerson has no such supporting testimony.

Aside from the transcript of his guilty plea, the timeline also belies Nickerson's assertion of coercion. He completed two four-page plea petitions on October 10, and signed every page. The petitions include an acknowledgment that no one coerced Nickerson into accepting the plea agreement. On October 21, he pleaded guilty in court, acknowledging to the district court his intention to do so. Weeks later, on November 12, he told his probation officer that he was "comfortable" with serving the sentence as established by his plea agreement.

Nothing but Nickerson's affidavit indicates that he was coerced in any way. The district court impliedly found Nickerson's affidavit not credible, and this court owes deference to such a determination. *See Aviles-Alvarez*, 561 N.W.2d at 527. Nickerson's plea was voluntary.

### Intelligent

Nickerson asserts his plea was not intelligent because he was not adequately advised of potential defenses. "The intelligence requirement ensures that a defendant understands the charges against him, the rights he is waiving, and the consequences of his plea." *Raleigh*, 778 N.W.2d at 96.

The record shows that Nickerson discussed possible defenses before his plea. Both plea petitions state that "possible defenses" were discussed. During his plea in court he acknowledged that he was giving up the right to assert self-defense. Once again, Nickerson relies only upon his own affidavit to suggest otherwise. *See Aviles-Alvarez*, 561 N.W.2d at 527 (deferring to the district court's credibility determination). Nothing in the record before us suggests that Nickerson's plea was not intelligent.

## Fair and just

Nickerson also argues that the district court abused its discretion in denying his pre-sentence motion to withdraw his guilty plea. A district court may, in its discretion, allow a defendant to withdraw his plea before sentencing if it is fair and just to do so. *Raleigh*, 778 N.W.2d at 97; *accord* Minn. R. Crim. P. 15.05, subd. 2. A district court must consider the reasons advanced by the defendant as well as any prejudice to the state that would result from granting the motion. *Raleigh*, 778 N.W.2d at 97. The defendant

bears the burden of providing reasons in support of withdrawal, but the state bears the burden of establishing prejudice. *Id*. We review the determination of the district court for an abuse of discretion and will only reverse in the "rare case." *Id*. (quotation omitted).

The only reasons advanced by Nickerson in support of withdrawal are that he was "badgered" by his counsel, or arguments that are irrelevant or unsupported. There is no evidence of badgering other than Nickerson's own assertion. Nickerson then argues that the crimes to which he pleaded were "serious," but provides no legal support indicating that this consideration is relevant. Finally, he asserts that he "immediately regretted his decision to plead guilty." Even assuming this point is relevant, it is contradicted by the record, as explained above: he signed each page of two plea petitions, pleaded guilty in court eleven days later, and then several weeks after that told his probation officer that he was "comfortable" with the results of his plea. Roughly two months after his plea in court was the first time that he gave any indication of regret.

The district court concluded that the state offered a showing of prejudice sufficient to defeat Nickerson's claim. This is not the "rare case" in which we would reverse the district court's denial of a pre-sentencing motion to withdraw a plea. *Raleigh*, 778 N.W.2d at 97.

**Affirmed.**