*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0161**

State of Minnesota,
Respondent,

vs.

Michael Devon Jarmon,
Appellant.

**Filed November 9, 2015
Affirmed
Reilly, Judge**

Scott County District Court
File No. 70-CR-13-13827

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Ronald Hocevar, Scott County Attorney, Todd P. Zettler, Assistant County Attorney, Shakopee, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Frank R. Gallo, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant Michael Jarmon challenges his convictions of second-degree murder and second-degree assault, arguing the district court erred in (1) sentencing him to the maximum presumptive sentence possible under the sentencing guidelines, (2) calculating his criminal-history score, (3) accepting his guilty plea, and (4) improperly inserting itself into the plea negotiations, and on the ground that he received ineffective assistance of counsel. Because the district court did not err in accepting appellant's plea or in sentencing him and did not insert itself into the plea negotiations, and because appellant did not meet his burden of proof in showing that his counsel was ineffective, we affirm.

## FACTS

On April 18, 2013, appellant Michael Jarmon and his codefendants Justin Watson and Steven Moore drove to Miguel Pantaleon's home to steal marijuana that they had arranged to purchase from him. Appellant brought a firearm. During the course of the robbery, appellant shot Miguel Pantaleon in the arm causing nerve damage and a broken arm. He shot Miguel Gallegos Rivera in the leg causing numbness and scarring. And he shot and killed Marcos Pantaleon. Appellant fled the state and was arrested in Las Vegas nearly four months later. Appellant was indicted on six charges including murder in the first degree.

Appellant and the state negotiated a plea agreement in which the state agreed to dismiss the remaining counts if appellant pleaded guilty to one count of second-degree intentional murder under Minn. Stat. § 609.19 and two counts of second-degree assault

2

under Minn. Stat. § 609.222. On the assault charges, appellant was to receive an executed sentence of 60 months, and the district court would decide whether the sentences would run concurrently or consecutively. On the second-degree murder charge, appellant would serve an executed sentence of no less than 312 months and no more than 439 months. The parties agreed that this would be his sentence regardless of his criminal-history score. Appellant waived his trial rights and the district court provisionally accepted this plea stating:

> THE COURT: This is a little bit more complicated than our usual case, but I think we are all understanding the same thing. It is that we have made an agreement within the parameters of some time periods, and that's going to remain *regardless of what your points come out to be*. Okay?
>
> . . .
>
> DEFENSE COUNSEL: . . . The bottom range of this deal *regardless of your points* is going to be 312, and the top end is going to be 439 with respect to Count 2. Okay? That's *regardless of your criminal history score*.

(Emphasis added.)

Appellant pleaded guilty to second-degree intentional murder and his factual basis at the plea hearing supported a plea for intentional murder. However, during the presentence investigation (PSI), appellant stated the murder was unintentional. According to the calculation on the criminal-history worksheet, his criminal-history score was three. At his October 16, 2014 sentencing hearing, appellant read a prepared statement supplementing the factual basis for his plea, again stating the murder was intentional.

During sentencing the district court provided reasons for its decision to give appellant the maximum presumptive sentence within the guidelines. The district court explained it "struggled" to put appellant in context with his codefendants because appellant brought the gun to the robbery and was less cooperative than the codefendants with authorities after the commission of the crime. The district court expressed its concern for public safety based on appellant's prior violent criminal history and sentenced appellant to consecutive sentences of 439 months for second-degree murder and 60 months for each assault, for a total of 559 months, the maximum sentence within the presumptive range allowed under the guidelines for an offender with a criminal-history score of three.

**D E C I S I O N**

**I.**

We first consider whether the district court erred in sentencing appellant to the maximum presumptive sentence possible under the sentencing guidelines. Appellant provided this court with three "areas of discussion" to consider in reducing his sentence. He argues his sentence should be reduced because (1) his sentence was more than the average sentence of similar offenders, (2) he was not sentenced with parity to his codefendants, and (3) state financial considerations warrant a lesser sentence. None of these arguments is persuasive.

Appellant made similar arguments to the district court before sentencing. Because the district court did not depart from the guidelines in sentencing appellant, the district court was not required to state reasons for the sentence imposed within the presumptive

4

sentencing range. *See State v. Delk*, 781 N.W.2d 426, 428 (Minn. App. 2010). Nonetheless the district court carefully considered and rejected each of appellant's three arguments. First, it observed that it has been sentencing people for many years, and felt this case was different from the codefendants and warranted the maximum presumptive sentence. The district court stated appellant "was pretty focused on self-preservation at the expense of others" noting that appellant's criminal behaviors had consequences for his mother and two girlfriends who were convicted of aiding an offender.[1] It found appellant to be different from his codefendants because he brought and fired the gun and then fled the state. Addressing appellant's other arguments, the district court stated:

> I am persuaded based on your prior gun convictions, based on your prior homicide conviction, that you present a greater risk, and I can't . . . send that away based on parity or based on numbers or based on percentages or based on money. It's a concern for the public.

Appellant does not appear to argue that the district court abused its discretion, and this court is "loath to interfere" with a sentencing decision absent an abuse of discretion. *State v. Case*, 350 N.W.2d 473, 476 (Minn. App. 1984). Here the district court did not abuse its discretion in giving appellant the maximum presumptive sentence possible under the sentencing guidelines.

---

[1] Appellant's mother, G.J., pleaded guilty to aiding an offender under Minn. Stat. § 609.495. Appellant's girlfriend, B.G., pleaded guilty to aiding an offender- accomplice after the fact under Minn. Stat. § 609.495, subd. 3. Appellant's other girlfriend, N.F., also pleaded guilty to aiding an offender- accomplice after the fact under Minn. Stat. § 609.495, subd. 3.

## II.

We next turn to appellant's pro se argument that the district court erred in calculating his criminal-history score. The state contends that appellant's criminal-history score was correctly stated on the criminal-history score worksheet, but asserts that the criminal-history score is irrelevant to sentencing in this case. We disagree that a criminal-history score is irrelevant to sentencing.

a. *Sentencing without regard to criminal-history score*

"Sentencing pursuant to the Sentencing Guidelines is not a right that accrues to a person convicted of a felony; it is a procedure based on state public policy to maintain uniformity, proportionality, rationality, and predictability in sentencing." Minn. Stat. § 244.09, subd. 5 (2014). It is "the responsibility of probation officers and district courts to ensure the accuracy of every defendant's criminal history score" in order to achieve the sentencing guidelines' purpose of promoting uniform sentencing. *State v. Maurstad*, 733 N.W.2d 141, 151 (Minn. 2007). "[S]entences must be based on correct criminal history scores," and "a sentence based on an incorrect criminal history score is an illegal sentence." *Id.* at 147. Further, "a defendant may not waive review of his criminal history score calculation." *Id.*

Here, the district court provisionally accepted a plea bargain "regardless of what [appellant's] points [came] out to be." The state argues that this is not an illegal sentence as contemplated by *Maurstad* because appellant "did not negotiate a criminal-history score [but instead] negotiated a specific range independent of his criminal-history score."

The state does not offer additional legal support for this argument. This reasoning is contrary to the purpose of the sentencing guidelines.

The district court did not follow the proper procedure under the Minnesota Sentencing Guidelines because it did not calculate a criminal-history score.

b. *Criminal-history score*

Appellant argues that his criminal-history score was incorrectly stated to be three. According to the criminal-history score worksheet, appellant had a criminal-history score of three. Appellant argues his score was two because he received a stay of imposition on a previous second-degree assault charge and should not have received a criminal-history point for that offense. The state argues that appellant is incorrect and his score was in fact three.

In 2005 appellant received a felony sentence with a stay of imposition for aiding and abetting assault in the second degree. Appellant contends he successfully completed the stay and therefore should not receive a point for that conviction. But the sentencing guidelines dictate the conviction is still included in calculating his criminal-history score. Minn. Sent. Guidelines I.B.19.a. (2015). This means he had a criminal-history score of three at the time of sentencing. Appellant makes no further challenges to his criminal-history score. The guidelines for an offender who commits intentional murder in the second degree with a criminal-history score of three provide for a sentencing range of 312 to 439 months. Minn. Sent. Guidelines IV.A (2015). Appellant received a guideline sentence of 439 months for his second-degree murder conviction.

Despite the district court's error in sentencing him without regard to his criminal-history score, the district court reached the proper result, a sentence within the presumptive range, and appellant's sentence is not illegal.

**III.**

We next address appellant's pro se argument that the district court erred by allowing him to enter an unlawful guilty plea because "there was significant factual information" provided to the court that would have supported a conviction of unintentional second-degree murder in violation of Minn. Stat. § 609.19, subd. 2, and the district court took "deliberate steps to overlook" this in order to "force" appellant to enter into an unlawful plea agreement. "Assessing the validity of a plea presents a question of law that we review de novo." *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). In order for a plea to be valid it must be accurate, voluntary, and intelligent. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994).

Appellant argues that his plea was not accurate because he has made contradictory statements about his intent to kill. During his PSI he said the murder was unintentional, but he said the murder was intentional at both the plea hearing and the sentencing hearing. When "credibility determinations are crucial, a reviewing court will give deference to the primary observations and trustworthiness assessments made by the district court." *State v. Aviles-Alvarez*, 561 N.W.2d 523, 527 (Minn. App. 1997). The record before this court contains a sufficient factual basis for the district court to accept appellant's guilty plea to intentional second-degree murder. The "typical way a district court satisfies the accuracy requirement is by asking the defendant to express in his own

words what happened." *Lussier v. State*, 821 N.W.2d 581, 589 (Minn. 2012). At the sentencing hearing appellant stated in his own words on the record, "[D]uring the course of the scuffle, I shot my gun at Marcos Pantaleon with the intent to kill, and the bullet struck him and caused his death." The district court credited appellant's own words that the shooting was intentional and accepted his guilty plea. Given our deference to district courts on credibility issues, we determine the district court did not err in accepting appellant's guilty plea.

**IV.**

We next consider appellant's pro se claim that the district court improperly inserted itself into the plea negotiations. "Anytime a district court improperly injects itself into plea negotiations the guilty plea is per se invalid." *State v. Anyanwu*, 681 N.W.2d 411, 415 (Minn. App. 2004).

Appellant does little to explain *how* the district court inserted itself into the plea negotiations. He appears to argue that the judge "conspired" with the state by accepting the plea agreement and by sentencing him to the maximum sentence allowed under the agreement. He states that the judge predetermined in an earlier hearing that appellant's sentences for assault would run consecutively. It is unclear which hearing he is referring to and there are no citations to the record.

To support his argument, appellant relies on cases where the district court inserted itself into a plea negotiation by promising a particular sentence in advance of accepting a plea. *See Anyanwu*, 681 N.W.2d at 415 (reversing when the district court promised a particular sentence in advance without agreement from the state). The record before this

9

court reveals it was appellant's attorney who made the record of the negotiated plea. At no point did the district court do anything more than seek clarification regarding the terms of the plea and it did not promise appellant a particular result before accepting his plea. The mere fact that appellant received the maximum sentence negotiated under the plea agreement does not support appellant's contention that the district court inserted itself or "conspired" with the state. The record before this court does not support appellant's assertion that the district court improperly inserted itself into the plea negotiations.

## V.

Appellant's final pro se argument is that he received ineffective assistance of counsel. A criminal defendant has the constitutional right to effective assistance of counsel. *State v. Patterson*, 812 N.W.2d 106, 111 (Minn. 2012). In order to succeed on an ineffective-assistance-of-counsel claim, "[t]he defendant must affirmatively prove that his counsel's representation 'fell below an objective standard of reasonableness' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2064, 2068 (1984)). "A strong presumption exists that counsel's performance fell within a wide range of reasonable assistance." *State v. Lahue*, 585 N.W.2d 785, 789 (Minn. 1998). The burden is on appellant to prove both prongs of the *Strickland* test. *Gates*, 398 N.W.2d at 561.

10

Appellant alleges six ways his counsel was ineffective. In his own words, his counsel was ineffective because:

    A) The moment counsel knew that the co-defendants said this was an unintentional murder- he choose to remain silent to the court.

    B) Counsel knew that [appellant] did not fully plead guilty to the element of 2nd degree intentional murder- but allowed the plea to go forward without argument.

    C) Counsel knew and had [] knowledge that inconsistent statements were made to the pre-sentence investigator indicating the victim died as an "unintended" consequence of a struggle with the gun.
. . .

    D) Counsel knew the district court injected itself and became a party to the negotiation but failed to object to the courts involvement.

    E) Counsel participated in preparing a statement for the state ensuring that appellant would say "he shot the victim" to sure [sic] up the elements of intentional murder, when counsel was reportedly told by appellant . . . he never intended to kill the victim.

    F) Counsel failed to object to the state's persistent argument to enhance the sentence by exaggerating [appellant's] criminality in order to have (2) counts consecutively imposed which was double in nature.

Appellant did not provide support in the record for his assertions, and we earlier discussed and rejected many of his arguments. To the extent that the arguments were not already discussed, we find them to be meritless because appellant has failed to overcome the "strong presumption" that his counsel's performance was not within "a wide range of reasonable assistance." *Lahue*, 585 N.W.2d at 789. He has not satisfied the first prong of

the *Strickland* test and, therefore, we cannot find that he received ineffective assistance of counsel.  *Gates*, 398 N.W.2d at 561.

**Affirmed.**