*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0684**

State of Minnesota,
Respondent,

vs.

Earl Lionell Ward,
Appellant.

**Filed December 27, 2016
Affirmed
Bratvold, Judge**

Ramsey County District Court
File Nos. 62-CR-14-3922
62-CR-14-4920

Lori Swanson, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Thomas R. Ragatz, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

**U N P U B L I S H E D   O P I N I O N**

**BRATVOLD**, Judge

Appellant challenges the district court's denial of his petition for postconviction relief, which sought to overturn his convictions for criminal vehicular operation and the

sentence imposed. Appellant argues that his guilty plea was unintelligent, his trial counsel was ineffective, and the district court improperly imposed a sentence that was an upward durational departure from the sentencing guidelines. Because Ward's plea was intelligent, he failed to demonstrate that his trial counsel's performance was objectively unreasonable, and the district court did not abuse its discretion in sentencing him under the career offender statute, we affirm.

## FACTS

In the early morning hours on July 1, 2014, appellant Earl Lionell Ward drove his van down a city street at high speed, crashing into a hole in the street and causing severe injuries to his eight-year-old son and fourteen-year-old daughter who were riding without seat belts. After the accident, Ward's son's leg was "visibly twisted unnaturally with a bone protruding" and he sustained a displaced femur fracture, requiring surgical repair. Ward's daughter was "barely conscious and not moving" after the accident, her spine was almost severed, and her injuries left her quadriplegic. Ward knew at the time that his son's leg was broken and that his daughter was injured, but he did not help them and instead fled the scene of the accident before law enforcement authorities or medical assistance arrived.

The state charged Ward with two counts of criminal vehicular operation resulting in great bodily injury (fleeing the scene) under Minn. Stat. § 609.21, subd. 1(7) (2012).[1] Before the plea hearing, the state filed three notices of its intent to seek an aggravated sentence. The state also sent Ward's trial counsel an e-mail stating that it would seek the

---

[1] The current version of the statute is Minn. Stat. § 609.2113, subd. 1(7) (2014).

2

statutory-maximum sentence regardless of whether Ward pleaded guilty or was found guilty.

According to the plea hearing transcript, Ward pleaded guilty.[2] There was no agreement on sentencing. Ward stated that he understood that the state was seeking an aggravated sentence, and he waived his right to have a jury decide whether aggravating factors supported an upward durational sentencing departure, leaving that decision to the district court. Ward provided a factual basis for the plea, answered questions from his lawyer, the prosecution, and the district court, and submitted his signed plea petition. The plea petition was lost from the record and is unavailable for review on appeal.

The district court accepted Ward's plea and, later, held a two-day *Blakely* court-trial to determine whether aggravating factors supported an upward durational sentencing departure. The state argued for an upward durational departure based on two factors: (1) Ward is a "career offender" under Minn. Stat. § 609.1095, subd. 4 (2014)[3]; and (2) Ward committed the crimes with particular cruelty by failing to render aid. Minn. Sent. Guidelines II.D.3.b.(2) (2012); *Tucker v. State*, 799 N.W.2d 583, 586–87 (Minn. 2011).

On the first day of the *Blakely* trial, the state called Ward's daughter and son to testify about the accident. On the second day, the state offered evidence of Ward's fourteen prior felony convictions to establish that he is a career offender. Three of these prior

---

[2] Ward also pleaded guilty to violating a domestic abuse no-contact order as it relates to his contact with his ex-wife on the night of the accident, but the domestic-abuse guilty plea is not at issue in this appeal.

[3] The statute in effect at the time Ward committed the offenses is identical to the current version of the statute. *See* Minn. Stat. § 609.1095, subd. 4 (2012).

convictions involved second-degree assault causing bodily harm, from which the state argued that Ward engaged in a "pattern of criminal conduct." The state's theory was that Ward's current and prior conduct formed a pattern of causing bodily injury. On January 26, 2015, the district court sentenced Ward to two consecutive statutory-maximum, 60-month sentences, expressly relying on the two factors identified by the state for the upward durational departure from the sentencing guidelines.

Ward timely appealed the district court's sentencing order. This court stayed the appeal pending postconviction proceedings. In his postconviction petition, Ward requested that the district court either allow him to withdraw his plea or resentence him because: (1) the state wrongfully induced him into involuntarily pleading guilty by making a false promise that his children would not be called to testify; (2) his plea was unintelligent because he did not know the maximum possible sentence before pleading guilty; (3) the district court improperly applied the career offender statute; and (4) the district court's more-than-double durational departure from the sentencing guidelines was unsupported by severe aggravating factors.

The district court held an evidentiary hearing on Ward's plea-withdrawal claims. Ward's trial counsel, the trial prosecutor, and Ward testified. Ward testified that he did not know the maximum possible sentence before pleading guilty and that he was induced into pleading guilty by the state's promise that his children would not be called to testify.

Counsel and the prosecutor testified that neither of them promised Ward that his children would not be called to testify if he pleaded guilty. Counsel stated that, before the plea, she advised Ward of the maximum possible sentence and that the state was seeking

4

an aggravated sentence. Additionally, counsel explained that sometime after pleading guilty but before sentencing, Ward asked her if he could withdraw his plea. She told Ward that they would need to request a continuance so that conflict counsel could be appointed to assist him. Counsel testified that she believed conflict counsel was necessary because Ward's plea-withdrawal claim was based on the advice she provided Ward about the plea.

The district court allowed the parties to submit memoranda and took the motion under advisement. In the district court's written order denying Ward's motion, the district court specifically credited counsel's testimony and discredited Ward's testimony. The district court concluded that the state made no promise that Ward's children would not be called to testify, Ward's plea was intelligent, the evidence sufficiently supported a finding that Ward had engaged in a pattern of criminal conduct under the career offender statute, and the district court properly relied on particular cruelty as an aggravated sentencing factor based on Ward's failure to render aid to his children. After the district court issued its order, this court dissolved the stay and reinstated this appeal.

**D E C I S I O N**

## I. Validity of the Guilty Plea

"When a defendant initially files a direct appeal and then moves for a stay to pursue postconviction relief, we review the postconviction court's decisions using the same standard that we apply on direct appeal." *State v. Beecroft*, 813 N.W.2d 814, 836 (Minn. 2012). "We review legal issues de novo, but on factual issues our review is limited to whether there is sufficient evidence in the record to sustain the postconviction court's findings." *Matakis v. State*, 862 N.W.2d 33, 36 (Minn. 2015) (citation and quotation

5

omitted). When "credibility determinations are crucial, a reviewing court will give deference to the primary observations and trustworthiness assessments made by the district court." *State v. Aviles-Alvarez*, 561 N.W.2d 523, 527 (Minn. App. 1997), *review denied* (Minn. June 11, 1997).

The validity of a guilty plea is a legal issue that this court reviews de novo. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "A defendant does not have an automatic right to withdraw a valid guilty plea." *Weitzel v. State*, 883 N.W.2d 553, 556 (Minn. 2016). After sentencing, a defendant may withdraw a guilty plea upon a timely motion and by establishing that withdrawal is necessary "to correct a manifest injustice." Minn. R. Crim. P. 15.05, subd. 1. The defendant bears the burden of establishing manifest injustice. *Weitzel*, 883 N.W.2d at 556.

A manifest injustice is shown when a guilty plea is not valid. *State v. Theis*, 742 N.W.2d 643, 646 (Minn. 2007). To be valid, a guilty plea must be accurate, voluntary, and intelligent. *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). A plea is intelligent if "the defendant understands the charges, the rights being waived and the consequences of the guilty plea." *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). The maximum sentence that may be imposed is a direct consequence of a guilty plea. *Raleigh*, 778 N.W.2d at 96. "Thus, if a defendant has been advised incorrectly about the sentence flowing from a plea, the plea may not be accurate, voluntary, and intelligent." *State v. Crump*, 826 N.W.2d 838, 842 (Minn. App. 2013), *review denied* (Minn. May 21, 2013).

Ward first asserts that his plea is invalid because it was unintelligent. He contends that, "because the district court failed to inquire at the time of the plea, there is no assurance

that Ward understood that the district court could impose two, consecutive, statutory-maximum, 60-month sentences." Ward does not argue that he was unaware of the possibility of receiving two consecutive sentences. *See State v. Ferguson*, 808 N.W.2d 586, 590 (Minn. 2012) (holding that consecutive sentencing is permissible in cases involving multiple victims); *see also* Minn. Stat. § 609.15, subd. 1(a) (2012). Rather, Ward asserts that he did not know that he could receive the statutory-maximum on each sentence.

Ward and his trial counsel offered conflicting testimony on this point, and the district court found counsel's testimony more credible. Counsel testified that she advised Ward that the state was seeking an aggravated sentence and that the maximum penalty for each offense was 60 months. Counsel also explained that, while Ward's written plea petition could not be found, it is her practice to fill in the maximum penalty in the appropriate blank on the plea petition form and to discuss it with her clients.

Ward's postconviction testimony was inconsistent with his statements at the plea hearing. He testified that he was unaware that the state would seek an aggravated sentence. Yet, according to the transcript of the plea hearing, Ward stated that he understood that the state was seeking an aggravated sentence. Because the district court was in the best position to evaluate the trustworthiness of the witnesses, we defer to the district court's credibility determinations. *Aviles-Alvarez*, 561 N.W.2d at 527.

Ward next argues that this court cannot be sure that he understood the consequences of his plea because the plea petition is missing from the record. He cites *Hoagland v. State*, in which the supreme court remanded the case to the district court for a new hearing because a state employee lost all of the trial transcripts. 518 N.W.2d 531, 537 (Minn. 1994);

7

*see also, e.g.*, *State v. Rhodes*, 627 N.W.2d 74, 77 (Minn. 2001) (declining to address appellant's insufficiency-of-the-evidence claim due to the incomplete record).

This case is distinguishable from *Hoagland* because all trial transcripts are not missing from the record. *See City of Wood Lake v. Johnson*, 358 N.W.2d 127, 131 (Minn. App. 1984) (holding that remand due to an incomplete record is unnecessary if the complaining party is not prejudiced). The transcripts from the plea hearing and the postconviction evidentiary hearing are available for our review and are adequate for assessing the validity of Ward's guilty plea.

Moreover, the plea hearing transcript belies Ward's claim that he did not know the consequences of pleading guilty. In his testimony, Ward twice stated that he went through the plea petition "line by line" with counsel. He agreed that he understood everything in the plea petition and that counsel answered all of his questions before the hearing. He further stated that he understood that the state was seeking an aggravated sentence.

Finally, Ward argues that the district court "was required [to] make a specific inquiry to ensure that Ward understood the maximum direct consequence of his plea." This argument lacks merit and is unsupported by Minnesota caselaw. *See Perkins v. State*, 559 N.W.2d 678, 690 (Minn. 1997) ("[W]hen Perkins entered his guilty plea, the judge did not directly ask him whether he knew that the court could depart upward to the statutory maximum. But Perkins did not, and could not, dispute that the plea hearing transcript reflected that his attorney informed him of the statutory maximum."); *State v. Counard*, 299 Minn. 216, 217, 216 N.W.2d 908, 909 (1974) (rejecting the defendant's argument that the district court should have interrogated him more thoroughly on the record because the

8

plea hearing transcript showed that the defendant discussed the consequences of the plea with counsel).

Ward relies on Minn. R. Crim. P. 15.01, subd. 1(6)(i), which requires the district court to "ensure [that] defense counsel has told the defendant and the defendant understands [t]he maximum penalty the judge could impose for the crime charged . . . ." The plea hearing transcript establishes that the district court adequately complied with rule 15.01. The district court ensured that Ward had spoken with counsel about the plea and understood the plea, and counsel questioned him on the record about his understanding of the plea. Therefore, we conclude that Ward has not established that his guilty plea was unintelligent, and the district court did not err in denying Ward's motion to withdraw his guilty plea.

## II.    Ineffective Assistance of Counsel

Ward filed a pro se supplemental brief, arguing that he received ineffective assistance of counsel because his trial counsel failed to advise him that he could receive a statutory-maximum sentence after pleading guilty and that his children could be called to testify. The state contends that this claim is *Knaffla*-barred because Ward did not raise it in his postconviction petition. *See State v. Knaffla*, 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976) ("[W]here direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief.").

Because this is Ward's direct appeal, *Knaffla* does not apply. *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013) (holding that, if the trial record is sufficient for analyzing an

ineffective-assistance-of-counsel claim, defendant must bring the claim on direct appeal or it will be *Knaffla*-barred in future proceedings). Ward timely filed his direct appeal from the district court's January 2015 sentencing order, and a claim of ineffective assistance of counsel may be brought on direct appeal from a sentencing order. *See* Minn. R. Crim. P. 28.02, subd. 2(1) ("A defendant may appeal as of right from any adverse final judgment," including "when the district court enters a judgment of conviction and imposes or stays a sentence."). Thus, Ward's claim of ineffective assistance of counsel is not barred and we will address the merits of the claim.[4]

Ineffective-assistance-of-counsel claims are reviewed de novo. *Opsahl v. State*, 677 N.W.2d 414, 420 (Minn. 2004). In *Strickland v. Washington*, the Supreme Court provided a two-part test for establishing ineffective assistance of counsel. 466 U.S. 668, 687 104 S. Ct. 2052, 2064 (1984). First, "the defendant must prove that counsel's representation fell below an objective standard of reasonableness." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013) (citing *Strickland*, 466 U.S. at 687–96, 104 S. Ct. 2052). Second, "the defendant must prove there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Id.* This court "strongly presume[s] that counsel's performance was reasonable." *State v. Whitson*, 876 N.W.2d 297, 305 (Minn. 2016). This court "need not address both prongs of the test if one is determinative." *Id.*

---

[4] The state cites *Perry v. State*, which held that "[c]laims asserted in a *second or subsequent postconviction* petition are procedurally barred under this court's *Knaffla* rule if they could have been raised on direct appeal or in a previous postconviction petition." 731 N.W.2d 143, 146 (Minn. 2007) (emphasis added). *Perry* is inapposite because Ward brings his ineffective-assistance-of-counsel claim in his direct appeal and has not filed a "second or subsequent postconviction petition."

Ward asserts that his trial counsel was ineffective for three reasons: (1) she did not advise him of the maximum possible sentence; (2) she did not advise him that his children might be called to testify at the *Blakely* court-trial; and (3) she did not allow him to withdraw his guilty plea.[5]

Ward's trial counsel's performance was not objectively unreasonable. As we have discussed, counsel testified that she advised Ward of the maximum sentence before he pleaded guilty. She also stated that she did not tell Ward "that his children would never be called to testify," and she testified that the state never made such a promise. Counsel further explained that sometime after the plea hearing but before sentencing, Ward told her that he wanted to withdraw his plea. Counsel advised him that, because his plea-withdrawal claim "was specifically about advice" that she had or had not given him, they would have to request a continuance so that conflict counsel could be appointed to assist Ward. *See Butala v. State*, 664 N.W.2d 333, 341 (Minn. 2003) (holding that "the better procedure" in cases where the defendant moves to withdraw a guilty plea based on inadequate trial counsel is to "afford substitute counsel for purposes of making the motion"). Ward apparently chose not to pursue such a continuance. The credibility of this testimony was for the district court

---

[5] Ward attaches two handwritten letters to his appellate brief, which he claims show that his trial counsel was ineffective. We will not consider these letters because they are outside the record on appeal. Minn. R. Civ. App. P. 110.01 (providing that the record on appeal consists of all documents filed in the district court and transcripts); *Plowman v. Copeland, Buhl & Co.*, 261 N.W.2d 581, 583 (Minn. 1977) ("It is well settled that an appellate court may not base its decision on matters outside the record on appeal, and that matters not produced and received in evidence below may not be considered.").

to evaluate, and we will not disturb the district court's decision to credit counsel's testimony over Ward's testimony. *Aviles-Alvarez*, 561 N.W.2d at 527.

Because Ward has failed to demonstrate that his trial counsel's performance was objectively unreasonable, he does not meet the first prong of the *Strickland* test and we do not address the second prong of the test. *Whitson*, 876 N.W.2d at 305.

## III.    Aggravated Sentence

This court reviews "a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). "If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed. But if the district court's reasons for departure are improper or inadequate, the departure will be reversed." *State v. Edwards*, 774 N.W.2d 596, 601 (Minn. 2009) (quotation omitted). Thus, two requirements must be met to support an upward sentencing departure: "(1) a factual finding that there exist one or more circumstances not reflected in the guilty verdict or guilty plea, and (2) an explanation by the district court as to why those circumstances create a substantial and compelling reason to impose a sentence outside the range on the grid." *State v. Rourke*, 773 N.W.2d 913, 919 (Minn. 2009). The state must prove to a factfinder beyond a reasonable doubt that aggravating factors support an upward sentencing departure. *Id.*

The district court based its decision to impose an upward durational departure on two aggravating factors: (1) the state proved Ward was a career offender under the applicable statute; and (2) Ward committed the crimes with particular cruelty by failing to render aid to his injured children after the accident. Because we conclude that the first

12

ground independently supports the district court's sentence, we do not address the second ground.

The career offender statute provides:

> Whenever a person is convicted of a felony, and the judge is imposing an executed sentence based on a Sentencing Guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the factfinder determines that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.

Minn. Stat. § 609.1095, subd. 4.

Thus, to establish that a defendant is a career offender, the state must prove three elements beyond a reasonable doubt: (1) the current crime for which the defendant is being charged is a felony; (2) the defendant has at least five prior felony convictions; and (3) the current crime is part of a pattern of criminal conduct. *Id.*; *State v. Gorman*, 546 N.W.2d 5, 7 (Minn. 1996).

A determination on the third element must be submitted to a factfinder; it is not a legal conclusion. *State v. Henderson*, 706 N.W.2d 758, 762 (Minn. 2005). We review the record to determine whether there is sufficient evidence supporting the factfinder's determination that the felony was committed as part of a pattern of criminal conduct. *State v. Outlaw*, 748 N.W.2d 349, 357 (Minn. App. 2008). "In reviewing a challenge to the sufficiency of the evidence, [this court is] limited to determining whether the evidence was sufficient to support the conclusion reached by the [factfinder]," and this court views the evidence in the light most favorable to the factfinder's determination. *Id.*

13

If the factfinder concludes that the state has met each element of the career offender statute, "[t]he statute does not limit the court's discretion [or] require any additional findings before sentencing a defendant to the statutory maximum." *Vickla v. State*, 793 N.W.2d 265, 269–71 (Minn. 2011). Thus, "the statute authorize[s] the sentence to be increased to the statutory maximum without the presence of severe aggravating circumstances." *Neal v. State*, 658 N.W.2d 536, 545 (Minn. 2003).

Here, Ward waived his right to have a jury determine whether aggravating factors supported an upward durational departure. *See State v. Dettman*, 719 N.W.2d 644, 650–51 (Minn. 2006) (holding that a defendant may waive the right to have a jury determine whether aggravating factors exist for an upward durational departure). After hearing evidence, the district court concluded that the state met its burden of proving each element of the career offender statute beyond a reasonable doubt. The first two elements are not at issue on appeal: the crime for which Ward was sentenced is a felony, and the state submitted evidence showing that Ward has at least five prior felony convictions.

Regarding the third element, the state relies on three of Ward's prior felony convictions in establishing that the sentencing offense is part of a pattern of criminal conduct: (a) second-degree assault for pointing a gun at and shooting a victim; (b) aiding and abetting another person to commit second-degree assault by encouraging the other person to shoot a victim; and (c) second-degree assault for hitting a victim with a board. Ward contends that, because he did not intend to injure his children, there was insufficient evidence for the district court to conclude that his conduct in this case forms a pattern with his prior assault convictions, which involved intentional infliction of harm.

14

The district court determined that Ward's convictions for criminal vehicular operation formed a pattern of criminal conduct with his three prior assault convictions because they "involved behavior in great disregard for human life and for public safety." The district court found that "[t]he similar characteristics in these crimes is, of course, the resulting injuries upon other persons."

Precedent instructs our review of the district court's reasoning. In *State v. Gorman*, the Minnesota Supreme Court held that a pattern of criminal conduct "may be demonstrated by proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics." 546 N.W.2d at 9. *Gorman* specifically rejected the argument that it is impossible to form a pattern of unintentional criminal conduct. *Id.* at 8–9. Consistent with *Gorman*, the district court determined that Ward's three prior assault convictions formed a pattern of criminal conduct with his criminal vehicular operation convictions because the conduct underlying all of Ward's convictions share the characteristic of causing bodily injury.

Ward argues that the "people got hurt" link is "tenuous" because it does not take into account that his prior convictions required intent, but intent is not an element of criminal vehicular operation. *Gorman*'s definition of a "pattern of criminal conduct" is not so narrow. *Gorman* expressly states that a pattern can arise out of conduct similar in "motive, purpose, *result*, participants, victims, or other shared characteristics." *Id.* at 9 (emphasis added). Accordingly, criminal conduct that produces similar results falls within *Gorman*'s definition of "pattern of criminal conduct" regardless of the defendant's intent.

15

Finally, we assess whether the district court abused its discretion by departing from the guidelines and sentencing Ward to two consecutive statutory-maximum sentences. The district court did not abuse its discretion because the career offender statute alone is an adequate legal basis for imposing two consecutive statutory-maximum sentences. *Ferguson*, 808 N.W.2d at 590; *Vickla*, 793 N.W.2d at 269–71; *see also State v. Stanke* 764 N.W.2d 824, 828–29 (Minn. 2009) (remand for resentencing is not required so long as the appellate court determines that the district court would impose the same sentence relying on at least one proper aggravating factor). Moreover, the district court's sentencing decision was well-reasoned after full consideration of the presentence investigation report, victim statements, and Ward's statements to the district court. Accordingly, we affirm the district court's sentence based on the career offender statute, and we do not address the district court's reliance on particular cruelty as an aggravating factor.

**Affirmed.**